FRANK B. CASSIDY, COLLECTOR OF TAXES

FOR THE TOWN OF HOULTON

*vs.*

AROOSTOOK HOTELS, INC.

Aroostook.     Opinion, August 17, 1936.

342

J. Frederic Burns,
R. W. Shaw, for plaintiff.
Nathaniel Tompkins, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J.   This is an action of debt, based on Section 28 of Chapter 14, R. S. 1930, to enforce a real estate tax lien on the "Snell House Lot" in Houlton. By agreement, hearing was had by a single Justice without intervention of a jury. His decision was: "Entry may be judgment for plaintiff for one thousand three hundred fifty-five ($1,355.00) dollars. No judgment against real estate specially attached."

The plaintiff, his lien claim denied (and it was of vital importance to him because of prior incumbrances), presents to this Court four exceptions to rulings of the Trial Court, viz.:

1. "That the list of assessment did not constitute a statutory list by reason of the failure of the assessors to sign and to properly certify same."

2. "That this failure" (meaning to sign and certify) "was not corrected by the certificates dated December 5, 1935."

3. "That the plaintiff is not entitled to judgment against the real estate described in the writ because the attachment

and return thereof did not state that the property was attached for the purpose of enforcing a tax lien."

4. "Because the assessors'" (collector's) "book did not contain a description of the real estate, . . ."

These exceptions we will consider in their logical rather than their numerical order.

## Exception 1

In 1932, when this tax was assessed, the Town of Houlton was using the "card system," so called. On an "orange card," sometimes called "the ten year card," was described and valued a single item of real estate with the name of the owner. If he had several taxable pieces of real estate, it took as many orange cards. The total valuation of one's real estate was entered on a white card, called the "final card," on which also appeared totals of his personal property valuations, his personal property taxes, real estate taxes, poll tax, the tax rate, and his total taxes. Neither the orange nor the white cards called for the signatures of the assessors but another, known as the "recapitulation card," did.

On the recapitulation card were entered totals of all taxable real estate and personal property valuations, totals of the real estate and personal property taxes, total poll taxes and the grand total of all taxes, including taxes on bank stock and automobile excise taxes, as well as an itemized statement of the town's appropriations. The recapitulation card for 1932 bore the signature and certificate of only one assessor until November 14, 1935, when two others signed it, the three assessors constituting a majority. The tax upon the Snell House lot was committed to the plaintiff for collection on December 9, 1932. His writ is dated December 15, 1933.

A lawful tax list requires the signatures of at least a majority of the assessors. *Belfast Savings Bank* v. *Kennebec L. & L. Co.*, 73 Me., 404, 406.

Section 81 of Chapter 13, R. S. 1930, provides:

"The Assessors shall assess upon the polls and estates in their town all town taxes and their due proportion of any state or county tax, according to the rules in the latest Act for raising a state tax, and in this chapter; make perfect lists

thereof under their hands; and commit the same to the constable or collector of their town, if any, otherwise to the sheriff of the county or his deputy, with a warrant under their hands, in the form hereinafter prescribed."

Section 84 of the same chapter provides:

"They shall make a record of their assessment and of the invoice and valuation from which it was made; and before the taxes are committed to the officer for collection, they shall deposit it, or a copy of it, in the Assessors' office, if any, otherwise with the Town Clerk, there to remain; and any place, where the assessors usually meet to transact business and keep their papers or books, shall be considered their office."

The recapitulation card of 1932, when signed by only one assessor, did not comply with the requirements of Section 81, because it was not "under their hands."

"It is not important in what manner they" (meaning the lists of assessments) "are signed, whether at the beginning or the end of the list, but they must be signed in some form by at least a majority of the assessors, and in such a manner as to show that they intended to give them their official sanction. The signing of a warrant to the collector is not sufficient. The list of assessments must also be signed. *Colby* v. *Russell*, 3 Me., 227; *Foxcroft* v. *Nevens*, 4 Me., 72; *Johnson* v. *Goodrich*, 15 Me., 29; *Bangor* v. *Lancey*, 21 Me., 472." *Belfast Savings Bank* v. *Kennebec L. & L. Co.*, supra, on page 406.

So it is absolutely essential that there be a tax list signed by a majority of the assessors. It may be the one retained by them under Section 84, or it may be another committed to the collector under Section 81.

It is not questioned that the plaintiff received from the assessors with their warrant for collection a tax list signed by a majority of them. In this list in the tax collector's book appeared statement of this tax against this defendant. Preceding the names of the tax payers as listed in the book was a certificate signed by the three assessors on the sixteenth day of December, 1932, that this was a "list of assessment of taxes in and for the Town of Houlton for the

year 1932, made by the undersigned assessors of said Town, . . ."
Following the list of names was another certificate, signed by the same assessors on the same day, "That the foregoing lists made by us, are perfect lists of assessments for the year 1932, which we have this day of December 16th, 1932, committed with a warrant of this date, under our hands, to Frank B. Cassidy, Collector of said Town of Houlton for collection."

Even though the recapitulation card when signed by only one assessor was insufficient to constitute a lawful tax list under Section 81, yet the list as contained in the collector's book, so far as the tax list is concerned, was sufficient to permit recovery of a judgment in personam for the tax. *Inhabitants of Norridgewock* v. *Walker*, 71 Me., 181. The plaintiff takes nothing under this exception.

## EXCEPTION 4

In the tax list committed to the tax collector there was no designation nor description of the assessed real estate. The entry was simply this: "Aroostook Hotels Inc., value of real estate, 30,000.00, total tax, 1,500.00." This omission, however, would not prevent recovery of a judgment in personam for the tax.

But the plaintiff is attempting herein to enforce a lien and recover a judgment in rem. The statute under which this action is brought (Chapter 14, Section 28, R. S. 1930) states:

> "The lien on real estate . . . may be enforced in the following manner, provided, however, that in the inventory and valuation upon which the assessment is made, there shall be a description of the real estate taxed, sufficiently accurate to identify it."

In order for a lien claimant to obtain a judgment in rem against a particular piece of real estate, on which to levy to satisfy his lien, he must establish as a fact that the real estate specially attached is that on which his lien is a charge. A tax lien is statutory. At common law there was no lien.

> "A tax upon real estate is primarily a pecuniary imposition upon the owner. The lien upon the real estate is simply a

security established by statute of which the tax collector may avail himself in default of payment. Apart from statute no such lien exists. The lien thus created by statute is upon the land itself, not upon interest of the person assessed. The purpose of granting the lien is to allow the land to be taken and sold for non-payment of taxes. . . . 'The tax lien must be commensurate with the tax; it covers the thing for which the tax is assessed and it covers nothing else.'" *Collector of Taxes of the City of Boston* v. *Revere Building, Inc., et als.*, 276 Mass., 576, 578, 177 N. E., 577.

In *Hayden, Jr.* v. *Foster*, 30 Mass., 492, Chief Justice Shaw, on page 497, said:

"Each estate is made liable for its own tax and no more. . . ."

In the latter case it was held that where separate and distinct items of real estate were separately valued and assessed that each item of the real estate was subject to a lien for payment of that portion only of the owner's tax which was assessed on the particular item of real estate.

It must be kept in mind that we are now dealing with the question of enforcing a lien, not with the question of obtaining a judgment in personam for the tax.

This Court, in *City of Rockland* v. *Ulmer*, 84 Me., 503, 24 A., 949, 950, in which three separate pieces of land were grouped and appraised as grouped, said, on page 507:

"The grouping of these three lots of land in one appraisal may, perhaps, prevent a tax lien attaching to either, but it did not increase the valuation nor the burden of the tax payer."

Judgment was given for the tax but the Court took particular pains to indicate a doubt, even in that case, where the lots were described but assessed as a whole, whether there was an enforcible tax lien. *A fortiori*, in absence of any description in any valid tax list, there can be no enforcement of a tax lien.

In *City of Rockland* v. *Farnsworth, Ex'x*, 111 Me., 315, 89 A., 65, 67, Judge Cornish no doubt had reference to a judgment in.

personam and not in rem to enforce a tax lien, when, on page 319, he said:

"In the case of assessment of tax upon real estate, neither a description of the property, nor a separate valuation in case of various parcels is necessary *under like circumstances.*"

None of the cases cited by him involved enforcement of a tax lien. *Inh. of Bucksport* v. *Swazey,* 132 Me., 36, 165 A., 164, also was not an action to enforce a tax lien.

This record does not disclose the existence of any lawful tax.list, containing a description of the Snell House lot, on which it is sought to charge the lien. In the tax list that was committed, there was no designation nor description of any real estate, and the other, the recapitulation card, with the signature of only one assessor upon it, did not constitute a lawful list. It had no more value as a tax list than a piece of blank paper. Until signed by a majority of the assessors, the description had no more efficacy than any other part of the document. Section 28, on which this plaintiff bases his action, specifically requires that there shall be a description of the real estate taxed "in the inventory and valuation upon which the assessment is made." Unless there be such description in a lawful inventory and valuation, the enforcement of the lien is impossible because it is not known to what it applies.

The plaintiff takes nothing under this exception.

## EXCEPTION 2

Did the two assessors who, on November 14, 1935, signed the recapitulation card (not committed to the collector) have the right to do so, so as to correct their failure to sign in the first instance? The presiding Justice ruled that they did not and we think rightly. The provision for their signatures, in Section 81, is peremptory. An unsigned list is no list. A signature by one assessor gives the list no more authenticity than as though no assessor had signed it. It is no mere irregularity or omission; it is no trifling error or mistake. It is not a matter of form but of substance. It was a fatal neglect to comply with an express provision of the statute.

It can not be cured by amendment under Section 10 of Chapter 5, R. S. 1930, which provides that:

"When omissions or errors exist in the records or tax lists of a town . . . they shall be amended, on oath, according to the fact, while in or after he ceases to be in office, by the officer whose duty it was to make them correctly. . . ."

This Court has already said, on page 183, in *Inhabitants of Norridgewock* v. *Walker*, supra:

"Before one proceeds to amend errors or supply omissions in a tax list, there must be a tax list in existence, such as the law requires, under the 'hands of assessors.'"

In that case, a book, claimed to be the record of assessment, invoice and valuation of the plaintiff town, was offered. It did not bear the signatures of the assessors. Two of the assessors were present in court, and the plaintiff offered to amend by having them then sign. The case was reported to the Law Court, where it was held that the amendment was not allowable. But judgment in personam was rendered because in the *collector's* book there was a list properly signed. To the same effect also see *Inhabitants of Topsham* v. *Purinton*, 94 Me., 354, 358. The plaintiff can not prevail on this exception.

## EXCEPTION 3

This exception does not require consideration, for our determination that the want of description of the Snell House lot in any lawful list necessarily prevents recovery of a judgment in rem, is decisive of the case.

*Exceptions overruled.*