**FREEPORT MINERALS COMPANY, et al.**

v.

**INHABITANTS OF the TOWN OF BUCKSPORT [1].**

Supreme Judicial Court of Maine.

Argued Nov. 18, 1980.

Decided Dec. 4, 1981.

Hale & Hamlin, Dale L. Worthen (orally), Ellsworth, for plaintiffs.

Fellows, Kee & Nesbitt, Samuel Nesbitt, Jr. (orally), Bucksport, for defendant.

Before McKUSICK, C. J., and WERNICK,[*] GODFREY, NICHOLS, GLASSMAN,[**] ROBERTS, and CARTER, JJ.

ROBERTS, Justice.

The plaintiffs appeal the dismissal by the Superior Court, Hancock County, of their Complaint for Review of Administrative Action brought pursuant to 36 M.R.S.A. § 843(1) under the procedure of M.R.Civ.P. 80B. We reverse the dismissal and remand to the Superior Court for further proceedings consistent with the opinion herein.

---

1. We delete from the caption the Bucksport Board of Assessment Review, initially named as a party, because the Board, having no enforcement function, is not a proper party. *See Assessors, Town of Bristol v. Eldridge*, Me., 392 A.2d 37 (1978).

* WERNICK, J., sat at oral argument and participated in the initial conference but retired prior to the adoption of this opinion.

** GLASSMAN, J., sat at oral argument and participated in the initial conference but died before the adoption of this opinion.

On April 1, 1978, the record date for tax assessment for the 1978 tax year, Freeport Minerals Co. (Freeport) and Penobscot Terminal Corporation (Penobscot) owned a sulphur storage facility located on the Penobscot River in Bucksport. On May 1, 1978, Freeport and Penobscot transferred the property to Storage Tank Development Corporation (Storage Tank). On or about July 1, 1978, Freeport and Penobscot, as record owners of the property, received a tax bill from the town of Bucksport which reflected a property valuation of $561,240 with a tax liability of $6,734.87.

On August 21, 1978, Freeport and Penobscot requested a tax abatement for the taxes assessed upon the property. On October 10, 1978, the Board of Assessors of the Town of Bucksport denied the request for tax abatement. On October 23, 1978, following the denial, Freeport sent to the Board of Assessors the documents of the sale of the property to Storage Tank "in order to establish [Storage Tank's] credentials for appealing, if they so desire...." Three days thereafter, on October 26, 1978, Storage Tank wrote the Town of Bucksport in regard to the authority of Storage Tank to prosecute "the appeal" and asked for an appointment with the town regarding the request for a tax abatement. Three days later Storage Tank appealed the denial of an abatement to the Board of Assessment Review which held a hearing on March 6, 1979, and denied the appeal on November 29, 1979.

After the denial of the appeal, Freeport, Penobscot and Storage Tank brought this action in Superior Court seeking judicial review of the denial. The Superior Court, on motion by the town, dismissed the action on the grounds that Storage Tank lacked standing to prosecute the appeal and that Freeport and Penobscot were precluded from prosecuting the appeal as they had failed to notify the Board of Assessment Review of their intention to appeal the decision of the Board of Assessors within thirty days as required by 36 M.R.S.A. § 843.

In reaching its decision, the Superior Court relied upon the provisions of 36 M.R.S.A. § 502 which provides in pertinent part that "... the status of all taxpayers and of ... taxable property shall be fixed as of [the first day of April]...." The Superior Court reasoned that because Storage Tank was not a taxpayer on April 1, 1978, and because section 502 states that the status of all taxpayers shall be fixed as of that date, Storage Tank was not a taxpayer authorized to bring an appeal under 36 M.R.S.A. § 843(1).[2]

In 1978 the statute governing abatement procedures, 36 M.R.S.A. § 841 provided in pertinent part "[t]he assessor or assessors for the time being, on written application ... within one year of commitment, may make such reasonable abatement as they think proper, provided the taxpayer has complied with section 706."

We note at the outset that 36 M.R.S.A. § 841 is silent as to who may apply for an abatement of taxes. Section 841 only requires "the taxpayer" to comply with the provisions of 36 M.R.S.A. § 706 as a condition precedent for a written abatement application.[3] 36 M.R.S.A. § 706 requires all persons liable to taxation to provide, after seasonable notice given by the assessor or assessors, "true and perfect lists of all their estate, not by law exempt from taxation, of which they were possessed on the first day of April...." 36 M.R.S.A. § 706.

**2.** 36 M.R.S.A. § 843(1) then provided:

Where the municipality has adopted a board of assessment review, if the assessors refuse to make the abatement asked for, the applicant may apply in writing to the board of assessment review within 30 days after notice of the decision from which such appeal is being taken or after the application shall be deemed to have been denied, and if the board thinks he is over-assessed, he shall be granted such reasonable abatement as the board thinks proper. Either party may ap-

peal from the decision of the board of assessment review directly to the Superior Court, in accordance with Rule 80B of the Maine Rules of Civil Procedure.

Since the initiation of this action the legislature has amended section 843(1) to allow an appeal period of sixty days. P.L. 1981 ch. 30 § 3.

**3.** 36 M.R.S.A. §§ 841 and 706 have since been amended in a manner not here pertinent by P.L. 1979, ch. 73 and P.L. 1981, ch. 30, §§ 1, 2.

The town does not claim that the required condition was not here accomplished as required by 36 M.R.S.A. § 841. The sale of the property to Storage Tank occurred on May 1, 1978. The tax bill was received by Freeport on July 1, 1978. Each of the parties, Freeport, Penobscot, and Storage Tank then had a substantial interest in seeking an abatement on the property. Although it was Freeport which actually requested an abatement on August 21, 1978, Storage Tank, as well as Freeport and Penobscot could then have properly applied for an abatement on the property as the lists required by section 841 had been provided to the assessors.

After the denial of Freeport's request for an abatement, Storage Tank with the approval of Freeport appealed to the Board of Assessment Review on October 26. A hearing was held by the Board of Assessment Review on March 6, 1979. Nothing in the record now before us suggests that the town, at the time of the appeal to the Board of Assessment Review questioned the ability of Storage Tank to apply for an abatement. Nor has it been suggested that the town questioned the authenticity of the notification of sale of October 23, 1978 sent to it by Freeport to establish Storage Tank's "credentials for appealing."

■ The right of an aggrieved taxpayer to seek review from an adverse decision of an administrative agency is well established in this state.[4] Courts have been understandably reluctant to deny a taxpayer this right. As the New Hampshire Supreme Court has stated "to deny justice to one who, being in no fault, has been wronged in the assessment of taxes, would be a glaring departure from that course of justice for which the statute [providing judicial review] was meant to provide." *Trust and Guaranty Co. v. Portsmouth*, 59 N.H. 33, 34 (1879).

■ It is a fundamental rule of statutory construction that in order to determine the legislative intent in relation to a partic-

ular section of a statute, courts should consider the entire system of legislation of which the section at issue forms a part. *In re Belgrade Shores, Inc.*, Me., 359 A.2d 59, 61 (1976). A reading of 36 M.R.S.A. § 502, in conjunction with the other provisions of Chapter 105 shows a major import of section 502 to be directed toward the compilation of accurate and comprehensive lists of taxable property, the identity of persons liable, and the creation of a certain and definite time frame within which that property may be assessed. *See Dead River Co. v. Assessors of Houlton*, 149 Me. 349, 355, 103 A.2d 123, 127 (1953); *Perry v. Inhabitants of the Town of Lincolnville*, 145 Me. 362, 365, 75 A.2d 851, 852–53 (1950); *cf. Lanford v. Town of Newton*, 403 A.2d 414, 416 (N.H. 1979). There is no doubt that this end result was here accomplished.

■ Here, true and perfect lists were furnished the assessors as required by sections 502, 841 and 706 of Title 10. The record owner of the property timely requested an abatement from the Board of Assessors. The subsequent purchaser timely pursued an administrative appeal from the denial of the abatement with full knowledge and written authority of the record owner. The town was given notice that the subsequent owner sought to pursue an administrative appeal and was notified in writing that the record owner had given Storage Tank full authority to so proceed. Given such circumstances, we do not think that section 502 should be used as a device to limit the ability of Storage Tank to seek judicial review of the administrative denial of the request for an abatement. On the facts of the case before us, we hold, therefore, that the Superior Court erred in dismissing the complaint on the ground that Storage Tank is not a proper party to seek judicial review of the administrative action denying the request for an abatement.

The entry is:

Judgment of dismissal vacated.

---

4. The right to seek review, currently provided by 36 M.R.S.A. §§ 843 & 844, has been recog-
nized by the legislature since the enactment of the Laws of 1821. Resolves 1821, ch. 116, § 13.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.