CONNECTICUT BANK & TRUST
COMPANY, N.A.

v.

CITY OF WESTBROOK and the Assessor of the City of Westbrook [1].

Supreme Judicial Court of Maine.

Argued Jan. 10, 1984.

Decided May 30, 1984.

---

**1.** In the Superior Court, the party-defendant was listed as "The City of Westbrook, Maine, and Mark A. Caldwell, Assessor of the City of Westbrook." Pursuant to M.R.Civ.P. 25(d)(2), we have deleted Caldwell's name, and describe him as a party by his official title.

Bernstein, Shur, Sawyer & Nelson, Gordon F. Grimes (orally), Geoffrey H. Hole, Portland, for plaintiff.

Gagan & Desmond, James E. Gagan (orally), Westbrook, for defendant.

Before NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

The plaintiff, Connecticut Bank & Trust Company, N.A., appeals from a judgment of the Superior Court (Cumberland County) entered August 24, 1983, on a complaint for review of governmental action brought pursuant to M.R.Civ.P. 80B. The court affirmed a decision of the Westbrook Board of Assessment Review which had declined to grant the plaintiff a tax abatement for the fiscal year 1982–1983 for a pollution control facility it owned in the City of Westbrook. Finding no error in the Board's denial of the abatement, we affirm the judgment of the Superior Court.

The parties have stipulated to the facts. Scott Paper Company, on behalf of Owner-Trustee Connecticut Bank & Trust, operates a biomass storage building which is part of a larger biomass co-generation complex located at the S.D. Warren Company plant in Westbrook. The building was in existence and completed by April 1, 1982.

On July 20, 1981, Scott applied to the Department of Environmental Protection (DEP), pursuant to 36 M.R.S.A. § 656 (1978), for certification of the building as an air pollution control facility, exempt from taxation under section 656(1)(E)(2).[2]

Scott and the DEP subsequently agreed that the DEP should defer consideration of the application until Scott could decide whether to submit applications for additional buildings in the complex.[3] In February 1982, Scott advised the DEP to process the application for the biomass storage building, and not to wait for the other applications to be filed.

On April 1, 1982, Mark Caldwell, tax assessor for the City of Westbrook, assessed the building at a value of $2,921,330.00, with a tax liability of $82,089.38 for the fiscal year July 1, 1982 to June 30, 1983.

The DEP denied Scott's application for the certificate for the building on May 28, 1982. Scott requested reconsideration by the DEP, pursuant to DEP regulations. After reconsideration of Scott's application, on August 25, 1982, the DEP certified the biomass storage building as an air pollution control facility within the meaning of section 656(1)(E)(2).

On September 6, 1982, the City billed Scott for taxes due on the building—$41,044.69 payable November 8, 1982, and the same amount payable May 9, 1983. On

---

**2.** 36 M.R.S.A. § 656(1)(E)(2) (1978) provides:
§ 656. Real estate
The following real estate is exempt from taxation:
  1. Real estate
  E. Pollution control facilities.
  (2) Air pollution control facilities, certified as such by the Board of Environmental Protection, and all parts and accessories thereof.
  As used in this paragraph:
  (a) "Facility" means any appliance, equipment, machinery, installation or structures installed, acquired or placed in operation primarily for the purpose of reducing, controlling, eliminating or disposing of industrial air pollutants.

**3.** At the time Scott submitted its application, the DEP was obligated by statute to make a final decision on such applications within 180 days of their receipt. 38 M.R.S.A. § 344(1) (1978). When section 344 was amended in 1983, that time period was shortened to 105 working days after acceptance of the application. 38 M.R.S.A. § 344(3) (Pamph.1983–1984). Both the old and new versions of the statute allow waiver of the time requirement "at the request of the applicant." § 344(2) (1978) and § 344(4) (Pamph. 1983–1984). In the present case, Scott clearly agreed to such a waiver.

September 22, 1982, Scott applied to the assessor for a tax abatement, pursuant to 36 M.R.S.A. § 841 (Supp.1983–1984), arguing that because in the interim between the April 1st assessment date and the September 6th tax commitment date the building had received the DEP certification necessary for the section 656 tax exempt status, the building was exempt from property taxes for the 1982–1983 fiscal year.

The assessor denied the abatement request. He decided the uncertified status of the building as of April 1st was determinative, and the August 25th certification could not be used by Scott retroactively, even though tax bills had not been sent until after the certification was received. On November 11, 1982, Scott appealed the assessor's decision to the Westbrook Board of Assessment Review, pursuant to 36 M.R.S.A. § 843(1) (Supp.1983–1984). The Board denied Scott's appeal.

■ On May 6, 1983, Scott filed a Rule 80B complaint in the Superior Court, seeking review of the Board's decision, pursuant to 36 M.R.S.A. § 843(1), and a declaratory judgment, pursuant to 14 M.R.S.A. § 5953 (1980), that the biomass storage building was exempt from taxation for the fiscal year 1982–1983.[4] On August 22, 1983, the Superior Court, without hearing, on the record and stipulated facts developed before the Review Board, upheld the Board's decision to deny Scott the tax abatement.[5]

■ Scott argues on appeal to this court, as it did before the Superior Court, that the Board erred in interpreting section 656(1)(E)(2) to require the DEP certification to be received prior to April 1, 1982 if it is to be used to support a tax exemption for the taxable year April 1, 1982 to March 31, 1983.[6]

■ We agree with the Superior Court's conclusion that "rather explicit language in both statutes and precedent" requires affirmance of the Review Board's decision. As the court stated, a strict construction of the exemption statute is appropriate in this case because of the basic principle, upon which we have repeatedly relied, that "taxation is the rule and tax exemption is the exception." *Silverman v. Town of Alton*, 451 A.2d 103, 105 (Me.1982). *See Pentecostal Assembly v. Maidlow*, 414 A.2d 891, 893 (Me.1980); *Hurricane Island Outward Bound v. Town of Vinalhaven*, 372 A.2d 1043, 1046 (Me.1977). "[A]ll doubt and uncertainty as to the meaning of the statute and legislative intendment must be weighed against exemption." *Silverman*, 451 A.2d at 105. With this directive in mind, we proceed to examine the assessment statutes, as a guide to the proper interpretation of section 656.

As the Superior Court correctly noted, the general statutes relating to assessment

---

4. The parties agree the biomass storage building is a pollution control facility within the meaning of section 656(1)(E)(2), and is therefore tax exempt. The sole issue before the court is when that tax exempt status arose. The statute is silent on this point.

5. The Superior Court decided "the plaintiffs are not entitled to the tax exemption that they seek." The court further explained: "Although the matter was presented to the City as a claim for an 'abatement' the issue is really presented as a claim for tax exemption since exemption is what is authorized by 36 M.R.S.A. § 656–1–E–2." Because the single issue is clearly Scott's entitlement to the tax exemption, we retain the tax assessor as a necessary party to enable this court, if necessary, to order him to grant the exemption. *Assessors, Town of Bristol v. El-*

dridge, 392 A.2d 37, 41 n. 3 (Me.1978); *Dillon v. Johnson*, 322 A.2d 332 (Me.1974). If the court were concerned solely with tax abatement, rather than exemption, the municipality would be the only necessary party-defendant. *Shawmut Inn v. Inhabitants of Kennebunkport*, 428 A.2d 384, 388 (Me.1981).

6. On an appeal from a Superior Court decision on a Rule 80B complaint, involving direct judicial review in the Superior Court, we examine directly the record developed before the board, for abuse of discretion, errors of law, or findings not supported by substantial evidence in the record. *See City of Bangor v. American Federation of State, County, and Municipal Employees, Council 74*, 449 A.2d 1129, 1133–34 (Me. 1982); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me.1982).

of property taxes specify that the nature of property, its amount, and value shall be ascertained as of April 1st each year,[7] and that the status of all taxpayers and taxable property shall be fixed as of that date.[8] *See Edgerly v. Honeywell Information Systems, Inc.*, 377 A.2d 104, 109 (Me.1977); *Sweetsir v. Chandler*, 98 Me. 145, 56 A. 584 (1903). In *Freeport Minerals Co. v. Inhabitants of Bucksport*, 437 A.2d 642 (Me.1981), we explained that the "major import" of these assessment statutes is "directed toward the compilation of accurate and comprehensive lists of taxable property, the identity of persons liable, and the creation of a certain and definite time frame within which that property may be assessed." *Id.* at 644. The assessment statutes focus, as a group, on April 1st as the "doom day"[9] to which both the taxpayer and the municipality can look for determination of the status of all property subject to taxation.

In addition to the clear import of the assessment statutes, prior decisions of this court have recognized, albeit in *dictum*, that the certification by the DEP required by section 656 must occur before the date of tax assessment. In *Statler Industries, Inc. v. Board of Environmental Protection*, 333 A.2d 703, 704 (Me.1975), we stated:

> In order to qualify for tax exemption either at the municipal level with reference to real estate taxes or at the State level with reference to sales and use taxes, an applicant must obtain, *as a condition precedent*, a certificate from the Board indicating that the pollution

control facilities meet the requisite statutory specifications.

(Emphasis added). *See Ethyl Corp. v. Adams*, 375 A.2d 1065, 1066 (Me.1977) (certification by DEP is "prerequisite" to obtaining sales and use tax exemption).

■ In sum, we have a general directive to construe tax exemption statutes strictly, a statutory scheme fixing April 1st as the date on which assessments are to be made, and interpretations by this court of the statutes' purpose as fixing a date on which tax obligations may be known with certainty. In the face of this, we cannot say the Review Board committed an error of law in denying Scott's request for a tax exemption for the pollution control facility for the taxable year April 1, 1982 to March 31, 1983, when the DEP certification was not made until August 25, 1982. Such a determination is consistent with this court's previous interpretations of our municipal tax assessment laws, as previously set forth, and is not considered as offending in any way the legislative intent to accord a tax exempt status to the subject property pursuant to section 656(1)(E)(2), once it is properly certified.

The entry is:

Judgment affirmed.

All concurring.

---

7. 36 M.R.S.A. § 708 (1978) provides:
  § 708. Assessors to value real estate and personal property
  The assessors and the chief assessor of a primary assessing area shall ascertain as nearly as may be the nature, amount and value as of the first day of each April of the real estate and personal property subject to be taxed, and shall estimate and record separately the land value, exclusive of buildings, of each parcel of real estate.

8. 36 M.R.S.A. § 502 (Supp.1983–1984) provides:
  § 502. Property taxable; tax year

All real estate within the State, all personal property of residents of the State and all personal property within the State of persons not residents of the State is subject to taxation on the first day of each April as provided; and the status of all taxpayers and of such taxable property shall be fixed as of that date. The taxable year shall be from April 1st to April 1st.

9. *See Edgerly v. Honeywell Information Systems, Inc.*, 377 A.2d 104, 109 (Me.1977); *Sweetsir v. Chandler*, 98 Me. 145, 56 A. 584 (1903).