1997 ME 95

**FINANCE AUTHORITY OF MAINE,**

v.

**CITY OF CARIBOU.**

Supreme Judicial Court of Maine.

Argued March 5, 1997.

Decided May 5, 1997.

Elizabeth L. Bordowitz (orally), Katryn A. Gabrielson, Finance Authority of Maine, Augusta, for plaintiff.

Richard D. Solman (orally), Solman & Hunter, P.A., Caribou, for defendant.

Ellerbe P. Cole, Maine Municipal Association, Augusta, amicus curiae.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶1] The City of Caribou ("the City") appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander J.*) vacating a decision of the State Board of Property Tax Review ("the Board"). The Board denied a request for a tax abatement filed by the Finance Authority of Maine ("FAME").[1] The taxes in question were assessed in 1989 before FAME acquired the subject property. On appeal, the City ar-

---

1. FAME is a body corporate and politic and a public instrumentality of the State. 10 M.R.S.A. § 964(1)(1977).

gues that the taxable status of the property for the 1989 tax year was fixed on April 1, 1989, and that the court erred in ruling that the property became tax exempt as of July 17, 1989, the date on which FAME acquired the property. We agree and vacate the judgment.

[¶ 2] The facts presented to the Board are undisputed and may be summarized as follows: The property consists of real and personal property located on the Washburn Road in Caribou. On April 1, 1989, it was owned by L & S Sales, Inc. (L & S), a potato processing company. The property was subject to a mortgage held by Key Bank of Maine securing a loan insured by FAME. L & S defaulted on the loan, Key Bank foreclosed, and FAME bought the property at a public auction. FAME took title to the property on July 17, 1989. Key Bank paid the City a pro rata share of the 1989 outstanding property tax based on the period of April 1, 1989 until July 17, 1989. The balance of the 1989 tax bill remains unpaid. In May of 1990, the City filed a tax lien certificate against the real property asserting its claim for the unpaid real property taxes.

[¶ 3] FAME applied to the City for an abatement of the unpaid real and personal property taxes asserting a statutory exemption from all property taxes pursuant to 10 M.R.S.A. § 980(3)(1977). The application was denied and FAME filed a petition for assessment review before the Board. After a 1991 hearing, the Board denied the petition in a written decision issued in February, 1996. FAME filed a petition for review of final agency action in the Superior Court pursuant to M.R.Civ.P. Rule 80C, and the court vacated the Board's decision. The City now appeals.

◼ [¶ 4] Because the Superior Court acted as an appellate tribunal, we review directly the decision of the State Board of Property Tax Review. At issue is the Board's construction of the tax law and FAME's exemption therefrom, and we review for an error of law. *American Republic Ins. Co., v. Superintendent of Insurance,* 647 A.2d 1195, 1197 (Me.1994).

◼ [¶ 5] The Board denied the requested abatement because it determined that FAME's tax-exempt status with respect to the subject property did not become operative until the next annual tax was assessed on April 1, 1990. The Board based this determination on its interpretation of section 502 that provides in part:

> All real estate within the State, ... is subject to taxation on the first day of each April as provided; and the status of all taxpayers and of such taxable property shall be fixed as of that date.

36 M.R.S.A. § 502 (1990). Long ago, we held that the liability of persons and property to municipal taxation is fixed on the first day of April, and that a "subsequent change of residence or ownership the law takes no note of until the regular periodical time of making a new assessment." *Inhabitants of Bucksport v. Woodman,* 68 Me. 33 (1877). By focusing on a date certain, the first day of April, section 502 establishes an orderly tax assessment scheme that provides the certainty that municipalities require to fund their budgets.

> The assessment statutes focus, as a group, on April 1st as the 'doom day' to which both the taxpayer and the municipality can look for determination of the status of all property subject to taxation.

*Connecticut Bank & Trust Co., N.A. v. City of Westbrook,* 477 A.2d 269, 272 (Me.1984).

[¶ 6] The Finance Authority of Maine Act, 10 M.R.S.A. § 961 *et seq.* (1997), creates FAME and provides a tax exemption for its property in the following terms:

> Property acquired, held or transferred by the authority shall be exempt from all taxes and from betterments and special assessments of the city, town, county, State or any political subdivision thereof. The authority may agree to make payments in lieu of taxes to the applicable political subdivisions.

10 M.R.S.A. § 980(3) (1997). The Act provides that subsection 980(3) is to be liberally construed and prevails over conflicting provisions of law. *See* 10 M.R.S.A. §§ 976, 980.

[¶ 7] FAME argues that from the moment of acquisition subsection 980(3) exempts

property owned by FAME from all taxation or any action that is tantamount to taxation, such as the recordation or enforcement of a lien for unpaid taxes. They argue, and the court held, that subsection 980(3) conflicts with the general law of taxation and, therefore, FAME's tax exempt status prevails. The argument is flawed. FAME interprets the phrase "exempt from all taxes" in subsection 980(3) as mandating exemption from the payment of any tax under any circumstance. Subsection 980(3) does not, however, retroactively invalidate unpaid taxes legally assessed before FAME's acquisition. Neither does it invalidate tax liens that encumber the property for taxes previously imposed.[2] With respect to real property, a tax lien operates as an encumbrance on the land itself and not on the interest of the person assessed. *Cassidy v. Aroostook Hotels*, 134 Me. 341, 186 A. 665 (1936).

[¶ 8] Subsection 980(3) exempts FAME from all taxes assessed after the date of acquisition. The Legislature has expressed no intention to disrupt the orderly tax assessment scheme established by section 502 of the general tax law. Although our prior cases have involved a strict construction of the applicable exemption statute, see *American Martial Arts Found. v. City of Portland*, 635 A.2d 962 (1993); and *Connecticut Bank & Trust Co., N.A. v. City of Westbrook*, 477 A.2d 269 (Me.1984), our opinions have always emphasized the need to give effect to section 502 and the overall statutory scheme.

> In sum, we have a general directive to construe tax exemption statutes strictly, a statutory scheme fixing April 1st as the date on which assessments are to be made, and interpretations by this court of the statutes' purpose as fixing a date on which tax obligations may be known with certainty. In the face of this we cannot say the Review Board committed an error of law....

*Connecticut Bank*, 477 A.2d at 272.

[¶ 9] When interpreting statutory language that forms a part of a larger statutory scheme, we consider the whole scheme "so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Lucas v. E.A. Buschmann, Inc.*, 656 A.2d 1193, 1195 (Me.1995) (citations omitted).

> It is our duty to view as one piece of legislation the several statutes governing a particular subject matter ... and, when there is need for construction, to favor such an interpretation as will, as nearly as possible, make the particular statutes a consistent and harmonious part of a single legislative chart.

*Delano v. City of South Portland*, 405 A.2d 222, 227 (Me.1979).

[¶ 10] Subsection 980(3) and section 502 can be read together without conflict, even when giving effect to the important policies underlying them both. Subsection 980(3) establishes the tax exempt status of property held by FAME, and section 502 defines taxation as an act that occurs on the first day of April. In the present case, the property acquired by FAME has not been taxed. Rather, FAME has acquired property that is encumbered by taxes previously assessed.

[¶ 11] The Board did not err in declining to abate taxes imposed on the subject property before the date of FAME's acquisition.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to enter a judgment affirming the decision of the State Board of Property Tax Review.

---

2. There shall be a lien to secure the payment of all taxes legally assessed on real estate as defined in section 551, provided in the inventory and valuation upon which the assessment is made there shall be a description of the real estate taxed sufficiently accurate to identify it. Such lien shall take precedence over all other claims on said real estate and shall continue in force until the taxes are paid or until said lien is otherwise terminated by law.

36 M.R.S.A. § 552 (1990).