## Roger BAFFER

v.

## DEPARTMENT OF HUMAN SERVICES.

Supreme Judicial Court of Maine.

Argued Nov. 3, 1988.

Decided Jan. 30, 1989.

John F. Lambert (orally), Black, Lambert, Coffin & Haines, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Leigh Ingalls Saufley (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

In the context of foster home licensing denials, this case requires us to examine the authority of a Department of Human Services hearing officer under the state Administrative Procedure Act. We conclude that if the hearing officer's decision is to be the agency's final action he must, upon review of the relevant evidence, exercise the discretion of the Commissioner. The alternative is to have the hearing officer make a report and proposed findings to the Commissioner (or someone with the Commissioner's authority) to make that decision upon the evidence and thus take final agency action.

Roger Baffer held a provisional license to operate a foster home for teenagers and successfully managed the foster placement of an 18 year old boy. During the course of this placement, the Department of Human Services became aware that on two occasions United States Customs officials in Boston had seized pornographic material depicting teenage boys addressed to Baffer. When a community care worker employed by the Department confronted Baffer with this information, he steadfastly denied ever having ordered such materials. It was apparent that the community care worker was not persuaded, however, and at first Baffer allowed his license to expire. After the lapse of some weeks, he reapplied for a license. Ultimately, the Manager of the Substitute Care Program denied the new application for the Department on the grounds that Baffer did not meet the standard provided in its rules for licensing family foster homes: "[t]he members of the foster family having significant responsibility for caring for the foster children shall be emotionally stable and mature, and able to exercise good judgment in the handling of a child and shall not engage in practices detrimental to the welfare of children." Me. Dep't of Hum. Serv. Rules Providing for the Licensing of Family Foster Homes for Children 9(A)(2) (May 1984) ("Licensing Rules"). Specifically, she stated in her denial that Baffer had

> failed to demonstrate the ability to exercise good judgment in the handling of children and engaged in practices detrimental to the welfare of children by the following:
>
> 1. Being the intended recipient of graphic pornographic materials involving adolescent and young adult males on at least two occasions. This material was intercepted by U.S. Customs Services on July 20, 1983, and again in January, 1985. You have provided the Department with no satisfactory information for how this could have occurred other than by your ordering this material.

2. Failing to take appropriate steps to keep this material from reaching you after the first interception was brought to your attention.

3. Failing to take measures to prevent children in your household from having access to the mail should such material reach your household.

In accordance with Maine statutes and Departmental regulations Baffer received an administrative hearing within the Department where testimony and exhibits were received into evidence. The result of the hearing was confirmation of the decision to deny him a license on the first ground, but rejection of the other two grounds. The Superior Court (Sagadahoc County; *Lipez, J.*) affirmed the Department's decision. We vacate and remand.

At the outset of the administrative hearing, Baffer agreed that if he ordered or played any part in arranging for the mailing of the pornographic magazines, he was not fit to possess a foster home license. The Department's hearing officer, however, did not resolve the simple factual controversy of whether Baffer had ordered the pornography, but found only that the materials were addressed to Baffer, that they were seized, and that Baffer handled the seizures in accordance with a lawyer's advice. Citing Licensing Rule 2(M), he also found that the risk in licensing Baffer under these circumstances did not fit within "common definitions as to degree of acceptability" and that under Departmental regulations, therefore, "the determination of acceptability or non-acceptability shall be made at the discretion of the Department" (quoting Licensing Rule 2(M)). He concluded that he, as a hearing officer, was not entitled to participate in the exercise of the Department's discretion. The premise of his ultimate decision was that he could not override a discretionary decision by Departmental staff unless he was persuaded that it was arbitrary, capricious or an abuse of that discretion. Baffer argues on appeal that this quasi-judicial approach improperly denied him a de novo review; that the Department's denial of his license application was arbitrary, capricious, an abuse of discretion and in bad faith; and that the

hearing officer improperly excluded evidence at the hearing.

There appears to be confusion within the Department of Human Services as to exactly what role a hearing officer plays. As the hearing officer in this case told the lawyers during the course of the proceeding:

There is a question up in the air within the Department as a whole, over in the hearings unit, about exactly what evidence ought to be considered at a hearing such as this. I'm going to let the evidence in, and I'll ask both sides for argument as to what exactly the issue is limited to, what exactly the question is that is to be answered in the hearing decision, and I will be ignoring evidence that does not relate to that question.

On another occasion he stated:

To move on, subject to argument after the hearing on just what the scope of the hearing is, I'm going to admit it, because I frankly don't know what the scope of the hearing is. I don't know what the law is. The Department has taken different stands at different hearings. The Department has not come down with one single set of procedural rules, or single set of specifications limiting issues to be considered at a hearing. I don't know how to handle it. And when the question comes up [clearly], the only way I'm going to respond to it is to get arguments from both sides and then consider those arguments, and come up with a decision based on those arguments.

Ultimately, after hearing the lawyers' arguments, the Department's hearing officer concluded that his role was merely to determine whether earlier Departmental staff decisions denying Baffer's license had been arbitrary or capricious and that he must treat those decisions as having exercised the discretion of the Department, a discretion to which he must defer. Specifically, he stated in his decision upholding the license denial:

It is the policy of the department that in administrative hearings a hearings officer is to make independent findings of fact; but it is also the policy of the

department that where the facts of a case are such that an exercise of discretion is warranted, the hearings officer will defer to the discretion of the decision-maker whose action is under review, unless the [record] shows the discretionary power to have been abused, or to have been exercised arbitrarily or capriciously.

To produce in this proceeding a result that is consistent with the intent of applicable statutory and regulatory provisions, and also consistent with the department's policies concerning hearings, the license denial decision must be sustained if the totality of the facts concerning the applicant and the department's actions, (as disclosed by a preponderance of evidence in the hearing record) do not show the denial to have been made arbitrarily, capriciously, or in an abuse of discretion.

The Department has not provided us with the Department's "policy" or "policies" to which the hearing officer refers. We must, therefore, turn to the statutes and the published rules to determine if this deference was appropriate.

Maine's foster care statute provides that any person aggrieved by the Department's refusal to issue or renew a license may request an administrative hearing under the Maine Administrative Procedure Act (APA). 22 M.R.S.A. § 7802(5) (Supp.1988). The Department's regulations track this provision in Licensing Rule 7. The Department notified Baffer that he had the right to a fair hearing of his license denial in accordance with the provisions of 5 M.R.S.A. § 10003 (1979) (although that section actually deals with license amendments, modifications and non-renewals, not Baffer's situation). Section 10003 provides for a hearing under subchapter IV of the APA, the portion of the Act dealing with adjudicatory proceedings, 5 M.R.S.A. §§ 9051–9064 (1979 & Supp.1988). That subchapter contemplates the appointment of an agency member, employee or agent to act as a presiding officer at any hearing. 5 M.R.S.A. § 9062(1) (1979). Beyond administering oaths, ruling on the admissibility of evidence and generally regulating the conduct of the hearing, the authority of such an officer is that "authorized by statute or agency rule consistent with this subchapter." 5 M.R.S.A. § 9062(3) (1979). The Department's hearing officer here states in his decision that his "jurisdiction was conferred by special appointment from the Commissioner, Department of Human Services." We have no other information concerning the scope of this appointment, and no reference to any agency rule.

Under the APA, presiding officers typically prepare a "report or proposed findings for the agency." 5 M.R.S.A. § 9062(4) (1979). See also § 9059(1) (1979) (distinguishing between "F. The recommended decision, opinion or report, if any, by the presiding officer; [and] G. The decision of the agency ...". Under that arrangement, final agency action is taken by an "agency member." See, e.g., 5 M.R.S.A. § 9055(1) (Supp.1988) (distinguishing between agency members authorized to take final action and presiding officers who only make findings of fact and conclusions of law). An "agency member" is defined as "an individual appointed or elected to the agency who is charged *by statute* with that agency's decision-making functions," 5 M.R.S.A. § 8002(3) (1979) (emphasis supplied). Here that would be the Commissioner. 22 M.R.S.A. § 1 (Supp.1988). The term explicitly does not include "agency staff." 5 M.R.S.A. § 8002(3) (1979). See also 5 M.R.S.A. § 8002(4) (1979) (defining final agency action as a decision where "no further recourse" is available within the agency).

But that is not the model the Department followed in this case. Here, no report or recommended decision was made, and no subsequent action was taken by the Commissioner or anyone else. Instead, the Department's hearing officer decided the license denial issue finally, and the Department treated his decision as the final decision of the Commissioner for purposes of judicial review of final agency action. If we assume, therefore, that the special appointment conferred upon the hearing officer the authority to take final agency action, he thereby possessed the authority of

the Commissioner in rendering his decision. But if that is the case, the Department's hearing officer could not defer to a purported exercise of discretion elsewhere, for in his decision he was exercising the authority of the Commissioner, the final repository of discretion. If the Department had wished to reserve discretion apart from the hearing officer, then it should have provided that its hearing officer would make a report and recommendation to the Commissioner (or someone with the Commissioner's authority) for his final decision.

This error taints the final agency action here. In substance, the Commissioner's decision is that the risk of licensing Baffer is sufficiently great that the Commissioner (acting through the hearing officer) should defer to the earlier decision made by Departmental staff. This thwarts the purpose of the hearing procedure. It is the Commissioner or his delegee who should be making that discretionary judgment call based upon all the evidence available to him.[1]

Because the Commissioner (acting through the hearing officer) ultimately denied the license on the ground that employees acting without the final authority of the Commissioner had earlier exercised discretion to which he must defer, we cannot sustain the decision. The matter must be remanded for new consideration under procedures permitting the Commissioner's discretion to be exercised in light of all the evidence. As a result, we do not reach the other issues Baffer raises.

The entry is:

Judgment vacated and remanded to the Superior Court with instructions to remand to the Department for further proceedings.

All concurring.

---

**1.** The adjudicatory proceeding is not an agency version of judicial review to determine whether the decisions of Departmental staff are supported by substantial evidence or are arbitrary or capricious, but rather an evidentiary hearing on "all issues." 5 M.R.S.A. § 9056(2) (1979). Although the APA recognizes the possibility of an appeal "within the agency," the reference is to an appeal of an agency decision made at the close of an adjudicatory proceeding, 5 M.R.S.A. § 9061 (1979),—*i.e.,* a step after the hearing officer's decision here.