**Barbara KELLEY**

v.

**COMMISSIONER, MAINE DEPART-MENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued May 2, 1991.

Michael E. Carpenter, Atty. Gen. and Christopher Leighton (orally), Deputy Atty. Gen., Dept. of Human Services, Portland, for appellant.

James R. Crotteau (orally), Pine Tree Legal Assistance, Inc., Machias, for appellee.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

The Maine Department of Human Services ("DHS") appeals from a decision of the Superior Court (Kennebec County, *Alexander, J.*) on a petition for review of agency action pursuant to 5 M.R.S.A. §§ 11001 *et seq.* and M.R.Civ.P. 80C. The court reversed the decision of a DHS administrative hearing officer that denied Barbara Kelley certain supplemental payments that she claimed were due her under the Aid to Families with Dependent Children program ("AFDC").[1] We conclude that Ms. Kelley was entitled to receive "gap" AFDC payments out of child support arrearage payments made by the father of one of her children from the time that child turned 18 until Ms. Kelley obtained employment and stopped receiving AFDC benefits, and we therefore affirm the judgment of the Superior Court.

---

1. The hearing officer's decision represented final agency action by DHS. *See Baffer v. Department of Human Services,* 553 A.2d 659, 662 (Me.1989).

## I.

AFDC is a federal-state cooperative program that provides monthly benefits to families or households ("assistance units") whose income is below the poverty level or "level of need." 42 U.S.C. §§ 601 *et seq.; see generally Littlefield v. State, Dept. of Human Services*, 480 A.2d 731 (Me.1984). In some states, the benefits are sufficient to bring the monthly household income ("unit income") up to the level of need. Other states, including Maine, are so-called "gap" states. In these states, AFDC benefits fall short of meeting the level of need; families receiving AFDC benefits in the "gap" states may apply other income to the "gap" or unmet need without affecting their AFDC benefits. Prior to 1975, one such source of other income was child support paid by a non-custodial parent to a custodial parent.

In 1975, in an effort to offset the costs of the AFDC program, Congress established a child support enforcement scheme whereby the AFDC recipient must assign to the state all rights to collect child support from a delinquent parent. 42 U.S.C. § 602(a)(26). The state then enforces those rights by obtaining, wherever possible, a judgment for child support; payments pursuant to the judgment are made directly to the state. *Id.*, § 654. The state retains its collections on the child support judgment, beyond a specified "pass-through" amount not at issue in this case, as a reimbursement for the AFDC benefits it has paid. *Id.*, § 657.

In the "gap" states (including Maine) the child support enforcement scheme reduced the total income of AFDC recipients who were previously entitled to collect child support. Congress therefore modified the effect of section 657 in those states by providing that a portion of the child support payments that the states collect pursu-

ant to section 654 must be disbursed to the AFDC recipient, up to the level of need—thus "filling the gap." These disbursements therefore do not reduce AFDC benefits. *Id.*, § 602(a)(28).[2] DHS collects the child support payments and forwards them to the AFDC recipient as supplemental AFDC benefits or "gap" payments, in addition to the ordinary AFDC benefits. Pursuant to sections 654 and 657, the state then keeps the remainder of the child support payments as a reimbursement for the costs of the AFDC program.

## II.

Barbara Kelley is a former AFDC recipient who had two children by different fathers. Pursuant to 42 U.S.C. § 602(a)(26), she assigned her rights to enforce child support obligations against the fathers to DHS. DHS obtained child support judgments against the fathers of both children. The judgment against Maurice Kelley, father of Cheryl Kelley, was obtained shortly before Cheryl reached the age of 18. In addition to a judgment for current child support payments, it contained a substantial judgment for arrearages in child support. Mr. Kelley has continued to make payments to DHS pursuant to the judgment for arrearages, although Cheryl is no longer a minor child entitled to support.

Because she had another minor child, Ms. Kelley continued to receive AFDC benefits until she subsequently obtained employment. She asserted that she was entitled to a portion of Mr. Kelley's arrearages payments as "gap" AFDC payments during the time she continued to receive AFDC benefits. After protracted negotiations with DHS, Ms. Kelley sought an administrative "fair hearing." *See* 42 U.S.C. § 602(a)(4). At the administrative hearing, the parties apparently agreed that the judgment against Mr. Kelley was for child

---

**2.** The statute states, in pertinent part:
A State plan for aid and services to needy families with children must ...
(28) provide that, in determining the amount of aid to which an eligible family is entitled, any portion of the amounts collected in any particular month as child support pursuant to a plan approved under part D of this subchap-
ter, and retained by the State under section 657 of this title, which ... would not have caused a reduction in the amount of aid paid to the family if such amounts had been paid directly to the family, shall be added to the amount of aid otherwise payable to such family under the State plan ...
42 U.S.C. § 602(a)(28).

support arrearages. The judgment itself was never introduced or made part of the record.

The hearing officer found as fact that the judgment was for child support arrearages, but ruled in favor of DHS. The hearing officer's decision relied on an advisory "policy interpretation" letter to DHS from the federal Department of Health and Human Services, Family Support Administration ("FSA") that characterized the judgment against Mr. Kelley as "being collected ... solely as reimbursements for prior AFDC benefits." Quoting from the FSA letter, the decision stated: "Because the arrears only child support collected on behalf of this over age child is not unit income, it should not be included in computing the GAP payment for the assistance unit of which she is no longer a member."

Ms. Kelley appealed to the Superior Court. Characterizing the judgment against Mr. Kelley as one for child support arrearages, in accordance with the hearing officer's finding, the court reviewed for legal error. The court concluded:

> Congress adopted [42 U.S.C.] § 602(a)(28) to prevent AFDC recipients in certain states from being penalized for having to assign their rights to child support to the state as required by 42 U.S.C. § 602(a)(26). Congress achieved that purpose by requiring supplemental AFDC payments equal to the portion of the child support collected in any month which the AFDC recipient, in the absence of the child support collection scheme, could have retained without causing a reduction in the AFDC payment. Essentially, Congress intended AFDC recipients to be no worse off for having assigned their support rights.
>
> The only way that purpose can be achieved in the instant case is by the inclusion of the collections from Maurice Kelley in the calculation of the supplemental AFDC payments due Barbara Kelley under § 602(a)(28). If there was no child support collection program, petitioner would have been entitled to the arrearages from Mr. Kelley even after his daughter turned 18. *Tapman v.*

*Tapman,* 544 A.2d 1265, 1268 (1988). She would have been able to keep part of those arrearages before her AFDC for her other children was reduced. Under the DHS interpretation, Ms. Kelley was worse off for having assigned her support rights as part of the child support collection scheme. This is a violation of § 602(a)(28).

(Footnote omitted.) The court therefore reversed the hearing officer's decision. DHS now appeals.

### III.

■■■ On appeal from a decision of the Superior Court acting as an intermediate appellate tribunal from an administrative hearing, we review the administrative decision directly. *See Huard v. Maine State Retirement System,* 562 A.2d 694, 695 (Me. 1989). Where the administrative agency's findings of fact are unchallenged, we review only for legal error. *See id.* at 696–97. We will overturn findings of fact by the administrative agency only where they are clearly erroneous, i.e. unsupported by substantial evidence anywhere in the record. *Gulick v. Board of Environmental Protection,* 452 A.2d 1202, 1207–1208 (Me.1982).

### IV.

■■ DHS argues on appeal that the lump sum portion of the judgment against Mr. Kelley was not for child support arrearages but for "AFDC reimbursement," and thus DHS was entitled to keep the money. *See* 19 M.R.S.A. §§ 491 *et seq.* (1981 & Supp.1990). Although the hearing officer labelled the nature of the judgment a finding of fact, it was actually a conclusion of law. Contrary to DHS's contention that the judgment was for "AFDC reimbursement," however, characterizing the judgment as one for child support arrearages was legally correct.

No provision of law allows DHS to collect amounts from Mr. Kelley merely for "AFDC reimbursement." The federal AFDC statute requires only the assignment of child support rights to the state. *See* 42 U.S.C. § 602(a)(26). The Maine

child support enforcement statute, enacted to comply with federal requirements, is more complex and uses different terms, but has the same effect as the federal statute. It provides that *"[w]hen no court order of support has been established,* a payment of public assistance for the benefit of the dependent child creates a debt due the department from the responsible parent in the amount of public assistance paid." 19 M.R.S.A. § 495(1)(A) (Supp.1990) (emphasis added). However, "[w]henever a court order of support has been established, the debt due the department from the responsible parent shall be the amount established under that order." *Id.,* § 495(1)(B). The statute then states,

> Any money realized by the department by proceedings under this subchapter shall reduce the debt of a responsible parent under section 495 and shall be paid to the recipient of assistance for the express benefit of the dependent children to the extent permissible by federal law and regulations.

*Id.,* § 513 (1981). Thus, the state has no right to obtain a judgment against a delinquent parent for "AFDC reimbursement" under the Maine statute that differs from its rights under the child support enforcement framework established by 42 U.S. C.A. §§ 602(a)(28), 654, and 657.[3]

## V.

DHS asserts that Ms. Kelley's right to any benefit from the child support rights she assigned to DHS ended when the child attained the age of 18, even though Mr. Kelley continued to pay arrearages on his child support obligation, and even though Ms. Kelley continued to receive AFDC benefits because she had another minor child. This is so, DHS argues, because the children are by different fathers.

The question whether the AFDC recipient is entitled to receive "gap" AFDC benefits from child support arrearages payments was considered by the U.S. Court of Appeals for the Fifth Circuit in *Quarles v. St. Clair,* 711 F.2d 691 (5th Cir.1983). The *Quarles* court's resolution of the issue has been specifically adopted and made applicable nationwide by the FSA in an amendment to the relevant federal regulations. *See* Aid to Families with Dependent Children and Child Support Enforcement Program; Computing a Supplemental Payment in States Required To Do So by Section 402(a)(28) of the Social Security Act[4], 51 Fed.Reg. 29,223–29,230 (1986) (codified at 45 C.F.R. Parts 232 and 233).

In *Quarles,* the court encountered a situation somewhat similar to the one in this case. Mississippi, a "gap" state, was obtaining judgments on child support rights assigned by AFDC recipients, pursuant to 42 U.S.C. §§ 602(a)(26) and 654. Some of the judgments included amounts for arrearages. Rather than passing through the collections on the arrearages portion of the judgments as "gap" payments, however, Mississippi was keeping them and forwarding only the portion of the collections that represented current child support.

Rejecting Mississippi's argument that it was required to forward only collections for current child support, the court stated:

> Section 602(a)(28) refers to the child support obligations *collected* in any particular month. It does not employ such terms as "due" or "owed" which the government would have us read into the statute as modifiers. Collected means collected. Had Congress wished the statute to have a modified reach, so as to distinguish due and excess contributions, it could easily have stated this distinction. Yet it did not. It chose instead to require the states to disburse to the

---

**3.** If the Maine statute denominated the collections as being for "AFDC reimbursements" and not child support arrearages, contrary to the federal child support enforcement scheme, it would be preempted by the federal regulations that implement 42 U.S.C. § 602(a)(28). U.S. Const. art. VI. *See* 45 C.F.R. § 232.20(a) (definition of support collections).

We note that characterizing the judgment as being for "AFDC reimbursement" rather than for child support would take it outside the provisions of 42 U.S.C. §§ 654 and 656 that prevent discharge in bankruptcy, contrary to Congress's intent in enacting the non-discharge provision.

**4.** Section 402 of the Social Security Act has been codified as 42 U.S.C. § 602.

AFDC family *any collected* child support obligations, to the extent that such amounts would not affect AFDC eligibility in any given month.

*Quarles*, 711 F.2d at 699 (footnotes omitted). The court noted that Congress's clear intent in enacting section 602(a)(28) was to ensure that the child support enforcement program would not cause a loss of income or benefits to AFDC recipients in "gap" states. *Id.* at 700–704. Prior to the provision for mandatory assignment of child support rights in section 602(a)(26), the AFDC recipient could have obtained a judgment for child support, and the ensuing payments on the judgment (up to the "gap" amount) would not have caused a reduction in AFDC benefits. Section 602(a)(26) deprived the AFDC recipient of those payments. Section 602(a)(28), therefore, ensured that an AFDC recipient in a "gap" state would be no worse off for having assigned child support rights to the state. *Id.* at 704.

The court further noted that if the state were allowed to retain arrearages for itself and distribute only current child support as "gap" payments, it would have an incentive to delay enforcing child support rights, so as to minimize its distribution of payments on the judgment to the AFDC recipient.[5] *Id.* at 706. Thus, the court concluded,

> Section 602(a)(28) requires that child support payments, whether current obligations or those in arrears ..., are to be paid to AFDC families to the maximum amount permitted in the month received while maintaining AFDC eligibility. Payments in excess of that amount in any given month are properly committed to reimbursing the government.

*Id.* at 708.

Following *Quarles*, the FSA promulgated AFDC regulations that applied its reasoning to all child support arrearages payments in "gap" states. 51 Fed.Reg. 29,223–29,230 (1986); 45 C.F.R. §§ 232.20, 232.21(b). Accordingly, child support arrearages collected by the state under an assignment of rights must be applied to "gap" payments.

DHS conceded at oral argument that child support arrearages must be applied to "gap" payments even after the child reaches age 18, where the custodial parent continues to receive AFDC benefits and the minor children are by the same father. However, DHS contends that the AFDC recipient's entitlement to "gap" payments out of child support arrearages end when the child reaches age 18, where the children are by different fathers.[6] In support of this contention, DHS cites *Schwendeman v. Ives*, 750 F.Supp. 17 (D.Me.1990) and argues that we should defer to the "policy interpretation" contained in the FSA letter. We find its argument unpersuasive.

In *Schwendeman*, the court upheld a federal regulation that provided for only a single "pass-through" payment in any month even where "there is more than one absent parent who owes and pays child support obligations in a single month." *Id.* at 18. *Schwendeman* is inapposite to this case, however, because it decided only that a duly promulgated and unambiguous regulation, not at issue here, was entitled to judicial deference as a permissible construction of the Congressional statute. *See id.* at 19–21. Here, we are not presented with a federal regulation, but with a letter that, at most, outlines the federal agency's position.

We owe such a letter no particular deference, especially since its factual premise is demonstrably incorrect. The letter asserts that "the arrears only child support collected on behalf of this over age child is not unit income." On the contrary, however, the arrearages are collected on behalf of Ms. Kelley, not of Cheryl. If Ms. Kelley had not assigned her child support rights to DHS pursuant to section 602(a)(26), she

---

5. A federal regulation that encouraged similar behavior, by exempting amounts collected from the child support debtor's tax refunds from being applied to "gap" benefits, has recently been declared invalid as contrary to the requirements of 42 U.S.C. § 602(a)(28). *Doucette v. Ives*, 744 F.Supp. 23, 27 (D.Me.1990).

6. As the schedule of payments provided to the hearing officer shows, the payments made by the father of the other child did not fill the "gap."

would have been entitled to collect the portion of the judgment that was for arrearages even after Cheryl turned 18. *See Tapman v. Tapman,* 544 A.2d 1265, 1268 (Me. 1988). If she still had been receiving AFDC benefits under those circumstances, she would have been entitled to retain the child support payments, up to the "gap" amount, without a reduction in her AFDC payments. DHS asserts that Mr. Kelley's child support payments can be used only for the benefit of Cheryl Kelley, citing *Wood v. Wood,* 407 A.2d 282, 287 (Me. 1979). As *Tapman* makes clear, however, payments of child support arrearages belong to the custodial parent, not to the child.

Nothing in the federal statute or regulations cuts off the disbursement of child support arrearage payments as supplemental AFDC "gap" payments while the custodial parent continues to receive AFDC benefits. Nor does any federal statute or regulation preempt the law of Maine as set forth in *Tapman.* The Fifth Circuit's decision in *Quarles* and the ensuing adoption of its reasoning by the FSA in its adoption of the controlling federal regulations both make it clear that Congress specifically intended in adopting section 602(a)(28) that AFDC recipients should be no worse off, with regard to AFDC benefits, for having assigned their child support rights to the state. *See Quarles,* 711 F.2d at 702–703. The construction that DHS argues for would frustrate Congress's intent.

We conclude that in light of Congress's intent in enacting section 602(a)(28), Ms. Kelley was entitled to have a portion of the child support arrearages collected from Maurice Kelley after Cheryl Kelley reached age 18 credited to her "gap" payments. Ms. Kelley's rights are not affected by the fact that her children are by different fathers.

The entry is:

Judgment affirmed.

All concurring.