**Russell K. DAVIS**

**v.**

**SCOTT PAPER COMPANY.**

Supreme Judicial Court of Maine.

Argued March 10, 1986.

Decided April 2, 1986.

McTeague, Higbee & Libner, Jeffrey Cohen, (orally), Brunswick, for plaintiff.

Richardson, Tyler & Troubh, Eve Cimmet, (orally), Portland, for defendant.

---

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

NICHOLS, Justice.

On this appeal we are called upon to interpret a unique provision of Maine's Workers' Compensation Act authorizing agreements of trial work periods, 39 M.R.S.A. § 100–A (Pamph.1985),[1] as the Employer, Scott Paper Company, challenges an order of the Commission's Appellate Division, to pay compensation to its Employee, Russell K. Davis, after the completion of work pursuant to such an agreement. We reject the Employer's argument that completion of the trial work agreement terminated its obligation under an earlier open-ended agreement to pay compensation.

After the Employee sustained an injury in the course of his employment in January, 1983, the Employer and Employee entered into an open-ended agreement to pay compensation for total disability, which agreement the Commission approved March 2, 1983. On May 5, 1983, the parties entered into a trial work agreement covering the period from May 9, 1983, through August 7, 1983. The Commission approved this agreement September 21, 1983.

The Employee returned to work May 9, 1983, and continued to work until September 13, 1983, during which time he did not receive workers' compensation. On the latter date the Employee was forced to discontinue work due to a recurrence of the earlier disability, and he was unable to work again until November 6, 1983. The Employer refused to pay compensation during this subsequent period of incapacity, claiming that both prior agreements had expired.

When the Commission granted the Employee's motion to compel payment of total disability benefits under the open-ended agreement for the period from September 13 through November 5, 1983, the Employer appealed to the Appellate Division, thus raising the novel issue of whether the Employee's completion of the trial work period automatically terminated the Employer's obligation under a prior compensation agreement to pay compensation during a subsequent period of disability. When the Appellate Division affirmed, the Employer sought appellate review.

Our statute does not address the effect of an employee's working beyond the three-month trial period when there is an open-ended compensation agreement in effect at the time of entering the trial work agreement. The Employee urges that termination of benefits must follow the requirements of 39 M.R.S.A. § 100(4).[2]

1. At the time the parties signed their trial work agreement section 100–A provided:
   The commission may approve an agreement of the parties to a trial work period at a specified job for a period not to exceed 3 months. During this trial work period and the payment of wages therefor, the payment of compensation under a compensation payment scheme shall be suspended. That suspension shall cease and weekly compensation shall be restored in the amount being paid prior to the commencement of the trial work period immediately upon the filing of a petition by the employee stating that he has attempted a trial work period and was unable to adequately perform during the period.
   The same section, as a result of amendments, now provides:
   The commission may approve an agreement of the parties to a trial work period at a specified job for a period not to exceed 3 months. During this trial work period and

the payment of wages for that work, the payment of compensation under a compensation payment scheme and all obligations under subchapter III–A shall be suspended.
   1. *Restoration of benefits.* That suspension shall cease and weekly compensation shall be restored in the amount being paid prior to the commencement of the trial work period immediately upon:
   A. Termination of employment during the first trial work period; or
   B. With the second or subsequent trial work period, the filing of a petition by the employee stating that he has attempted a trial work period and was unable to adequately perform during the period.
   The provisions on restoration also apply to a trial work period under section 83.

2. 39 M.R.S.A. § 100(4) (Pamph.1985) provides:
   If the employee is receiving payments at the time of the petition, the payments may not be

In resolving this issue we must consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved. *See Brennan v. Johnson*, 391 A.2d 337, 340 (Me.1978); *In Re Belgrade Shores, Inc.*, 359 A.2d 59, 61 (Me.1976).

The Workers' Compensation Act does not state that the completion of a trial work agreement terminates an employer's obligation to pay compensation under an open-ended agreement, yet two specific methods of terminating the obligation to pay compensation are available to an employer. Under 39 M.R.S.A. § 100 either the employer or the employee may file a petition for review, and the employer may suspend payments so long as his petition is accompanied by a certificate stating that the employee has resumed work. Alternatively, the employer may file an agreement to discontinuance of compensation form signed by the employee. *See* Maine Workers' Compensation Rules and Regulations, 90–351 C.M.R. 2.7 (1984) (now C.M.R. 4.7 (1985)). Under either of these methods the termination of benefits is subject to explicit employee concurrence or a subsequent hearing and determination of entitlement. This procedural framework shows us that the Legislature intended that an employee should receive specific notice before termination of his right to receive compensation. To read a trial work agreement as termi-

nating a prior open-ended compensation agreement would not further this legislative intent because it would allow for termination of compensation without a specific, clear notice to the employee. It would also permit termination of compensation as a result of unilateral action by the employer without the subsequent approval of the Commission as required in each of the two specified methods of termination.

Significantly section 100–A provides for a "suspension" rather than a "termination" of the compensation agreement, thereby indicating the temporary nature of the hiatus in payments.[3]

Clearly, the Legislature wants specific notice to an employee before he loses or surrenders his right to compensation. This legislative purpose is better fulfilled by placing the burden on the employer to move expressly for termination of benefits upon completion of the trial work period or to use either of the other two statutory methods of termination available to it rather than by allowing for termination by default. The latter would place the burden on the employee to petition for continued compensation. The goal of encouraging employees to resume work as soon as is reasonable after sustaining an injury is better achieved by limiting the adverse results of attempting to return to work.

decreased or suspended pending the hearing and final decision upon the petition, except in the following circumstances:
A. The employer and the employee file an agreement with the commission; or
B. The employer or his insurance carrier files a certificate with the commission stating that:
(1) The employee has left the State for reasons other than returning to his permanent residence at the time of injury;
(2) The employee's whereabouts are unknown; or
(3) The employee has resumed work.

3. Significant also may be the Statement of Fact that the sponsor of the original bill, L.D. 1351, appended thereto in 1977, which in pertinent part declared:

There should be a way of letting a claimant try working at his old job without penalizing him if he finds he cannot do it.

This bill will permit a workmens' compensation claimant to go back to work for a trial period with the agreement of the employer and with the approval of the Industrial Accident Commission. This trial period would be for a period of up to 3 months, and would permit the claimant to earn his normal wage, while at the same time suspending the payment of workmens' compensation benefits to him. If, at the end of the trial period, the claimant found he could not adequately perform the work, then he would revert to his previous status of being a workmens' compensation claimant.

In most instances the employee will be willing to sign an agreement to discontinuance of compensation if the trial work period is successful. If he should not cooperate, the simple filing of a petition certifying the employee's return to work would allow the employer to suspend payments. Even if the employer, as here, fails to follow either one of these procedures, there is a set-off of wages paid against compensation payments due as a result of the failure to terminate the open-ended agreement.

The rule adopted by the Commission in the case before us does not place an undue burden on employers and will further the legislative purpose of insuring a speedy, inexpensive, and final settlement of claims. *See Anania v. City of Portland,* 394 A.2d 782, 784 (Me.1978).

The entry is:

Judgment affirmed.

It is ordered that the Employer pay to the Employee $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.