William F. ROBINSON

v.

**BOARD OF TRUSTEES OF the
MAINE STATE RETIREMENT
SYSTEM**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1986.
Decided April 7, 1987.

John W. Chapman (orally), Richardson, Tyler & Troubh, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Gregory W. Sample, Asst. Atty. Gen. (orally), Augusta, for defendant.

Robert E. Miller, City Sol., Bangor, James N. Katsiaficas, Maine Mun. Ass'n, Augusta, amicus curiae.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

ROBERTS, Justice.

The Board of Trustees of the Maine State Retirement System appeal from a judgment entered by the Superior Court, Kennebec County, reversing an administrative decision rendered by the board concerning the level of retirement benefits William F. Robinson, a state police officer, is entitled to receive. The board contends that the Superior Court erred when it interpreted 5 M.R.S.A. § 1092(11) and 1121(1)(C) (1979 and Supp.1986)[1] as requiring the board to compute that portion of Robinson's benefits resulting from his service with the City of Bangor based on his "average final compensation" (AFC) as an employee of the state rather than his AFC with the city. We vacate the judgment of the Superior Court.

## I.

Robinson is a state police officer who has served in that capacity for approximately twenty years. Immediately prior to his service with the state police, Robinson was employed from April 1962 to March 1966 as a police officer for the city. Robinson contributed to the retirement system while employed by both the city and the state. Robinson withdrew his retirement contributions paid through the city upon terminating his employment in 1966. In 1981, Robinson began an installment pay-back of these previously withdrawn funds pursuant to 5 M.R.S.A. § 1094(10) (Supp.1986).

State police officers may retire with full benefits upon completing 20 years of creditable service pursuant to 5 M.R.S.A. § 1121(1)(C).[2] Eligibility for retirement from the state police is based solely on employment with that entity. Under section 1121(1)(C), the retirement allowance is equal to one-half of the officer's AFC. AFC is defined in 5 M.R.S.A. § 1001(3) (1979) as:

the average annual rate of earnable compensation of a member during the 3 years of creditable service as an employee in Maine, not necessarily consecutive, in which such average annual rate of earnable compensation is highest, or during his entire period of creditable service if such period is less than 3 years.

Robinson's AFC upon retirement from the state police is or will be approximately $32,000. His final AFC with the city after almost four years of service is approximately $4700. In addition to the one-half AFC allowance, section 1121(1)(C) provides that a retiring officer will receive "an additional 2% of his average final compensation for each year of membership service not included in determining eligibility for retirement under this paragraph." "Membership service" is defined as "service rendered while a member of the retirement system for which credit is allowable under

**1.** We note that the retirement statute in effect during this litigation and on appeal has been repealed. *See* P.L. ch. 801, § 2 (effective January 1, 1987). The current statute governing the state retirement system, enacted by P.L.1985, ch. 801, § 5 (effective January 1, 1987), now appears at 5 M.R.S.A. §§ 17001–18663 (Pamph. 1986).

**2.** Section 1121(1)(C) provides in pertinent part: Any member of the State Police who became a member of that department after July 9, 1943, but before September 1, 1984, may retire upon completion of 20 years of creditable service as a state police officer. Military service credits as allowed under section 1094 shall not be considered as part of the creditable service necessary for the 20 years' service

as a state police officer, but military service creditable under section 1091 shall be considered to be part of the creditable service necessary for the 20 years as a state police officer provided that the member was a state police officer at the time of entrance into such military service and upon separation from military service again became a state police officer. The total amount of the service retirement allowance of a member retired in accordance with this paragraph shall be equal to ½ of his average final compensation, and an additional 2% of his average final compensation for each year of membership service not included in determining eligibility for retirement under this paragraph.

section 1094." 5 M.R.S.A. § 1001(13) (1979).[3]

The parties agreed that upon retirement Robinson will be entitled to one-half of his AFC with the state police as his annual retirement allowance. The parties disagreed as to the nature and amount of the AFC upon which the additional 2% per year of Robinson's service will be computed. Robinson contended that "membership service" as set forth in section 1121(1)(C) includes service performed with any other entity at any other time if that entity contributed to the retirement system. As a corollary, Robinson argued that section 1121(1)(C) requires the board to calculate all of his 2% additional benefit with reference to his final state police AFC without regard to his final city AFC.[4] Thus, to calculate his repurchased benefit, Robinson would have the board multiply his final state police AFC by 2% times approximately 4—the number of years Robinson worked for the city. The board decided that the additional benefit provided for in section 1121(1)(C) pertains only to membership service with the state police beyond the 20 years necessary to establish eligibility for retirement. The board maintained that the retirement benefit to which Robinson is entitled as a result of his city employment must be measured and calculated with reference to the city retirement plan in effect in 1966.[5]

The board held a hearing at which it declined to adopt Robinson's interpretation of the statute. Instead, relying largely on informal opinions from the Attorney General's office, the board concluded that Robinson would not be entitled to utilize his AFC as a state police officer when calculating his benefit based on service with the city.

Rather, apparently consistent with the city's plan, Robinson would be entitled to additional benefits derived from his AFC with the city.

Robinson appealed the board's decision to the Superior Court. The court reversed the board's administrative decision, agreeing with Robinson that the term "membership service" contained in section 1121(1)(C) means membership service with any other entity contributing to the system. Consistent with this view, the court held that the term "average final compensation" contained in the additional benefits clause of section 1121(1)(C) refers to final AFC with the state police and that Robinson's four years with the city were to be calculated, for retirement purposes, at a rate of 2% of his final AFC with the state police. The court did not decide what entity should ultimately fund this benefit. The board appeals from the Superior Court decision.

## II.

Because the Superior Court acted as an intermediate appellate tribunal reviewing agency action in this case, we examine directly the record developed by the board and review for legal error the decision of the board not that of the Superior Court. *See Nancy W. Bayley, Inc. v. Maine Employment Sec. Comm'n,* 472 A.2d 1374, 1377 (Me.1984). The standard of review to be applied is the same as that utilized by the Superior Court—limited to whether the board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Id. See also Shackford & Gooch, Inc. v. Town of Kennebunk,* 486 A.2d 102, 104 (Me.1984) (appeal of zoning

---

3. 5 M.R.S.A. § 1094(1)–(17) (1979 and Supp. 1986) define "creditable service" under a variety of circumstances.

4. It is unclear from the record whether Robinson has served beyond the minimum 20 years with the state police. If so, it is undisputed that those additional years with the state police would result in an additional benefit based on his state police AFC.

5. It appears from the record that under Bangor's plan Robinson is entitled to receive 2% of

his AFC with the city multiplied by the number of years he was a city police officer—in this case, four years. We need not and do not decide, however, to what benefit Robinson may be entitled under the Bangor plan or who must ultimately fund this benefit. We do, however, disagree with Robinson's argument that under the board's interpretation of the statutory provisions in question it would never be a good financial decision to exercise buy-back rights under section 1094(10). Our computations do not support Robinson's assertion.

board decision). Moreover, although we are not bound by an administrative construction of a statute, such a construction will not be lightly disregarded. *See Soucy v. Board of Trustees of Maine State Retirement System,* 456 A.2d 1279, 1281 (Me. 1983). In this case, we determine that the administrative interpretation is consistent with the overall structure of the retirement statute and with the Legislature's intent.

### III.

■ Robinson urges us to apply, in a rather mechanical way, the literal terms of section 1121(1)(C) so that his retirement allowance will be enhanced. Specifically, Robinson interprets the term "membership service" in the following passage from section 1121(1)(C) to mean membership service with any entity contributing to the system, whether that service was prior or subsequent to state police service:

> The total amount of the service retirement allowance of a member retired in accordance with this paragraph shall be equal to ½ of his average final compensation, and an additional 2% of his average final compensation for each year of membership service not included in determining eligibility for retirement under this paragraph.

Although we look first to its language when interpreting a statute, "we do recognize that the fundamental rule of statutory construction to ascertain the real purpose and intent of the Legislature...." *Mundy v. Simmons,* 424 A.2d 135, 137 (Me.1980). Moreover, we "should consider the entire system of legislation of which the section at issue forms a part." *Freeport Minerals Co. v. Town of Bucksport,* 437 A.2d 642, 644 (Me.1981).

The retirement system's statutory framework underwent considerable reform and change in 1975. *See* P.L.1975, ch. 622. In particular, the Legislature was concerned

with the heavy costs and potential for abuses associated with the so-called "special plans." "Special plans" give to certain employees in high risk occupations greater benefits upon retirement than normally acquired by regular state employees. State police officers were covered by such a plan prior to 1975 and continue to be so covered. Prior to 1975 state police officers contributed 7.5% of their salary to the system and were able to retire after 20 years of state police service on one-half of their current annual salary. Service beyond the 20 year minimum did not result in additional benefits.

The 1975 amendment changed section 1121(1)(C) to allow a retirement benefit equal to one-half of the officer's "average final compensation." P.L.1975, ch. 622, § 41. To compensate for this potential decrease in retirement allowance, the Legislature added the 2% provision at issue here.[6] A review of the legislative history reveals that an additional purpose of adding the 2% provision was to give state police officers an incentive to remain with the state police beyond the minimum 20 years necessary to become eligible for retirement. Under the amended statute, an officer serving in excess of 20 years has deducted from his pay 6.5% of his salary rather than 7.5%. In exchange for this continued service and contribution to the system, the officer receives 2% of his AFC *for each year of service with the state police* beyond that necessary to establish retirement eligibility. We therefore reject Robinson's interpretation of section 1121(1)(C) because it is inconsistent with the legislative purpose.

■ Robinson's position is further undercut when section 1121(1)(C) is examined in relation to other sections of the retirement statute included in the 1975 amendments enacted by chapter 622. "[W]e must consider the whole statutory scheme ... so that a harmonious result, presumably the

---

6. The Legislature did not single out state police officers to receive this additional benefit. Other "special plan" employees obtaining the same additional 2% benefit by enactment of P.L. 1975, ch. 622 include Inland Fisheries and Wildlife wardens and Marine Patrol officers (§ 1121(1)(D) (Supp.1986)); forest rangers (§ 1121(1)(E) (Supp.1986)); airplane pilots employed by the state, firemen, policemen, and sheriffs (§ 1121(4)(C) (1979)); liquor inspectors (§ 1121(4)(D) (Supp.1986)) and; wardens and other employees of the Maine State Prison (§ 1121(4)(F) (Supp.1986)).

intent of the Legislature, may be achieved." *Davis v. Scott Paper Co.*, 507 A.2d 581, 583 (Me.1986). The interpretation of section 1121(1)(C) advocated by Robinson would create a conflict with the express terms of 5 M.R.S.A. § 1092(11) (1979). Our view of section 1121(1)(C) avoids this conflict and harmonizes these provisions of the retirement statute.

5 M.R.S.A. § 1092(11)[7] governs an employer's liability for retirement benefits when a member transfers between employers participating in the retirement system. In the case now before us, Robinson transferred from the city (a local participating district) to the state. Thus, section 1092(11) should be utilized to define the financial relationship between the city and the state with respect to Robinson's retirement fund.

Section 1092(11) was amended in 1975 simultaneous with the amendments to section 1121(1)(C). *See* P.L. ch. 622, § 26. Prior to 1975, section 1092(11) provided that the employee's accumulated contributions and creditable service time were to be transferred to the account of the second participating employer. As a result, the employer at the time of retirement was liable for the full retirement benefit. The 1975 reform legislation addressed the problem of automatic portability of contributions and creditable service time by providing that the new employer has no liability for benefits arising from service to another employer, unless that liability will require no additional contributions from the new employer, or unless the new employer elects to accept the additional costs associated with such a transfer. If a subsequent employer does not elect to accept the employee's prior contributions and creditable service time, the employee, upon retirement, receives split benefits—each calculated on the basis of service time, benefit plan and AFC with each participating employer. An underlying purpose of the 1975 amendments to section 1092(11) was to give to participating employers the ability to hire employees previously employed by a participating entity without necessarily incurring substantial additional retirement benefit costs.

To interpret section 1121(1)(C) as Robinson advocates would, in effect, require the state to accept his previous contributions and creditable service time with the city. The parties do not dispute that the state never elected to acquire Robinson's previous contributions and creditable service time. The choice whether to elect was precisely what the 1975 amendments to section 1092(11) sought to provide participating entities. Because Robinson's interpretation of section 1121(1)(C) would necessarily require the state to accept Robinson's previous contributions and creditable service time and award him a single 2% benefit based on his current AFC, we decline to adopt it.[8] We hold, therefore, that the term "membership service" contained

---

**7.** Section 1092(11) provides in pertinent part: Any member of the retirement system whose service is terminated as an employee, either as defined in section 1001 or as an employee of a participating local district, shall, upon subsequent reemployment as such an employee but with a new employer, provided he shall not have previously withdrawn his accumulated contributions, thereupon have his membership transferred to his account with his new employer, and shall be entitled to all benefits based on creditable service and earnable compensation with the previous employer and the provisions of this chapter in effect with respect to the previous employer at the date of termination of service by the member, which do not require additional contributions by the new employer. The new employer may elect to include the creditable service and earnable compensation with the previous employer with the creditable service and earnable com-

pensation with the new employer, and shall then make such contributions, from time to time, as may be necessary to provide the benefits under the retirement system for the member as have accrued to him by reason of his previous employment and may accrue to him by reason of his new employment. All funds in the retirement system contributed by his former employer on account of his previous employment shall be transferred to the account of the new employer and shall be used to liquidate the liability incurred by reason of such previous employment.

**8.** Neither Robinson nor the city argue that the 1975 amendments providing additional benefits under the special plans constitute the "election" required by section 1092(11), and nothing in the legislative history suggests or supports such an interpretation.

in the additional 2% benefit clause of section 1121(1)(C) applies only to employment with the state police beyond that required to establish eligibility for retirement from that agency.

The entry is:

Judgment vacated.

Remanded with direction to enter judgment affirming the decision of the Board of Trustees of the Maine State Retirement System.

McKUSICK, C.J., and GLASSMAN and CLIFFORD, JJ., concurring.

WATHEN, Justice, with whom NICHOLS, Justice, joins dissenting

I respectfully dissent from the opinion of the Court. I am unable to find a principled basis for ignoring the plain meaning of the language set forth in section 1121(1)(C). Although the Court attempts to justify undertaking its statutory exegesis, in the final analysis the effort is unpersuasive. Nothing is gained by characterizing plaintiff's argument as urging a "mechanical" application of the literal terms of the statute. Plaintiff correctly asserts that in the absence of ambiguity there is no reason to engage in any further construction of the language. I would apply the statute as written and affirm the judgment of the Superior Court.