STATE of Maine

v.

FISHING VESSEL, FLYING YANKEE.

Supreme Judicial Court of Maine.

Argued Jan. 2, 1991.
Decided April 22, 1991.

Michael E. Carpenter, Atty. Gen. and Thomas A. Harnett, Asst. Atty. Gen. (orally), Augusta, for appellant.

William N. Ferm (orally), Ferm & McSweeney, Ellsworth, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

ROBERTS, Justice.

The State appeals from a judgment of the Superior Court (Hancock County, *Beaulieu, J.*) affirming a decision of the District Court (Ellsworth, *Russell, J.*) that the Department of Marine Resources improperly seized Eugene Eaton's fishing vessel, Flying Yankee, pursuant to the former 12 M.R.S.A. § 6207 (1981).[1] Because our construction of section 6207 permits the State to seize Eaton's fishing vessel and because the statute gave Eaton fair warning that his conduct could lead to such confiscation, we vacate the judgment.

On December 12 and 22, 1986, and on January 14, 1987, Eugene Eaton was charged with violating 12 M.R.S.A. § 6954–A (Supp.1989), a statute that prohibits scalloping and the operation of a watercraft while towing a drag or trawl in the Frenchboro cable area. After issuing the third citation to Eaton, the Marine Patrol seized Eaton's fifty foot fiberglass hulled fishing vessel, known as Flying Yankee, scallop dragging gear and equipment, eighty-one pounds of scallops and miscellaneous other items. Pursuant to section 6207, the officer then filed a libel in the District Court seeking a decree of forfeiture against:

> one (1) fifty (50) foot fiberglass-hulled fishing vessel, documentation number 624738, commonly known as "Flying Yankee," hailing port Little Deer Isle; said fishing vessel containing or having attached thereto, scallop dragging gear and equipment, navigational equipment, and various and sundry other miscellaneous items; and eighty-one (81) pounds of scallops.

The District Court thereupon issued an order of notice. Eaton filed a motion to dismiss the libel and to stay the libel action until the related criminal proceedings against him were resolved.[2] The District Court dismissed the libel action insofar as it pertained to the vessel, Flying Yankee. The Superior Court affirmed the decision of the District Court, holding that the libel of Flying Yankee brought by the State was invalid because former section 6207 did not authorize the libel of a vessel. The State now challenges the refusal of the District Court and the Superior Court to sanction the libel of a vessel under section 6207.

At the time Eaton's boat was impounded, section 6207 stated, in relevant part, that:

> Any marine organism, which is taken, bought, sold, shipped, transported or found in the possession of any person in violation of any provision of marine resources' laws, shall be contraband and shall be subject to forfeiture in accordance with this section and section 6206. All equipment used or possessed in violation of any provision of marine re-

---

**1.** 12 M.R.S.A. § 6207 was amended by P.L.1989, ch. 742, § 3 (effective July 14, 1990) to include "vehicles" among items subject to forfeiture. The amendment is not applicable to this proceeding, 4 M.R.S.A. § 302 (1989).

**2.** Eaton appealed three convictions for dragging the Frenchboro cable area in the Spring of 1990.

In that appeal Eaton challenged the constitutionality of section 6954–A, the denial of his motion to suppress certain evidence and the sufficiency of the evidence supporting his convictions. We rejected all three of Eaton's arguments and affirmed his convictions. *State v. Eaton,* 577 A.2d 1162 (Me.1990).

sources' laws shall also be contraband and subject to forfeiture.

Section 6207 is derived from R.S. ch. 34, § 148 (1944), which allowed the State to punish illegal lobstering by seizing and libeling "any trap, car, gear, or any other device used in connection with the illegal catching ... holding, carrying, or transportation of lobsters" together with the contents of these items. That statute was replaced by P.L.1947, ch. 332, § 139, which expanded its regulatory scope to include the harvest of a wide variety of marine organisms. Like its predecessor, section 139 provided for forfeiture as a penalty for its enumerated misdeeds, but it wholly changed the language of the forfeiture section, allowing seizure and libel of the illegally captured marine life together with "equipment possessed in violation of the provisions of this chapter." Possibly recognizing the ambiguity in this language, the Legislature again amended this portion of the statute in 1959, modifying the "equipment" subject to forfeiture to "equipment *used or* possessed in violation of any provision of this chapter" (emphasis added). P.L.1959, ch. 331, § 1.

Eaton's argument is based on an interpretation of this legislative history, specifically the 1947 change in wording. According to Eaton, the words of section 139 permitting the State to seize "equipment possessed in violation of the provisions of this chapter" removed boats from the purview of forfeiture proceedings because boats, in and of themselves, could not be possessed in violation of the statute. Eaton thus argues that the word "equipment" in section 139 and subsequent modifications of the statute, including section 6207, does not include boats. We disagree.

"In the absence of a legislative definition, [a] term must be given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of a particular' interpretation." *Secure Environments v. Town of Norridgewock*, 544 A.2d 319 (Me. 1988). In the instant case, no one disputes the State's claim that the overall framework of the statute is to permit the Department of Marine Resources to conserve and develop marine resources through strict enforcement of laws. The ability to seize vessels was certainly a strong deterrent in the legislative framework created by the 1944 statute, and there is absolutely no evidence that the Legislature intended to lessen this penalty in subsequent revisions of the Act. We conclude the word "equipment" in the statute has historically included vessels, regardless whether the poorly worded 1947 statute would have actually permitted the forfeiture of a vessel or any other non-contraband equipment. Any ambiguity about whether a vessel could be *possessed* in violation of the statute was obviated by the 1959 amendment. Moreover, our interpretation is consistent with both the 1944 statute and the 1959 amendment. We thus construe the 1947 statute and its progeny, including section 6207, to include boats within the definition of "equipment".

Our interpretation of section 6207 is further supported by the fact that the State presents uncontradicted evidence of a long-standing pattern of enforcement consistent with our construction. While this court is not bound by the interpretation of a state agency, such interpretations "will not be lightly disregarded." *Robinson v. Board of Trustees of Maine State Retirement System*, 523 A.2d 1376, 1379 (Me.1987). We find that this consistent enforcement combined with the legislative purpose and history of section 6207 gave Eaton fair warning that the consequences of his action could lead to the confiscation of his boat.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.