**LEWISTON RACEWAY, INC.**

v.

**MAINE STATE HARNESS RACING COMMISSION.**

Supreme Judicial Court of Maine.

Argued June 7, 1991.
Decided July 16, 1991.

---

Alfred C. Frawley (orally), Peter Lowe, Brann & Isaacson, Lewiston, for plaintiff.

Michael E. Carpenter, Atty. Gen., James Bivins, Gwendolyn D. Thomas (orally), Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS, and BRODY, JJ.

WATHEN, Justice.

Defendant Maine State Harness Racing Commission appeals a decision of the Superior Court (Androscoggin County, *Delahanty, C.J.*) reversing a Commission order denying plaintiff Lewiston Raceways, Inc. stipend monies for capital improvements. Defendant argues that it is authorized to withhold the payment of the stipend pursuant to 8 M.R.S.A. § 275 (Supp.1990). We disagree and affirm the judgment of the Superior Court.

Plaintiff was a commercial, extended meet[1] harness racing licensee during the 1989 calendar year. In that year, plaintiff deposited a percentage of the handle[2] with the Treasurer of the State as required by statute, 8 M.R.S.A. §§ 274 & 275 (Supp. 1990). The statutes direct the Treasurer to return a portion of the funds in the form of stipends to the licensee. Section 274 provides an "extended meet" stipend and section 275, at issue here, provides a "commer-

cial meet" stipend. One half of the commercial meet stipend is used to supplement purse money and one half is used for capital improvements of the racing facility. Because plaintiff did not seek a license for 1990, the Commission voted to withhold that portion of the 1989 commercial meet stipend allocated to capital improvement. It interpreted the statute as referring to future improvements only and concluded that plaintiff was not entitled to the stipend because it was no longer licensed. Pursuant to M.R.Civ.P. 80C, Lewiston Raceway, Inc. sought judicial review in the Superior Court. The court reversed the decision of the Commission and ordered that the stipend be paid. This appeal followed.

When the Superior Court acts as an intermediate appellate tribunal and receives no additional evidence, we will review directly the record developed before the governmental agency. *Robinson v. Board of Trustees of the Maine State Retirement System*, 523 A.2d 1376, 1378 (Me. 1987); *Spain v. City of Brewer*, 474 A.2d 496, 498 (Me.1984). The standard of review is "limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Robinson*, 523 A.2d at 1378. The question in this case is whether the Commission erred as a matter of law in withholding the stipend.

After a licensee has paid the State Treasurer the requisite amount of its handle, the applicable statute describes the process for distributing the stipend as follows:

> If the total of the regular and exotic wagers exceeds $37,000,000 for any calendar year, 72% of the revenue credited to the General Fund under this section attributable to this excess shall be returned by the treasurer of state to commercial meet licensees.... This payment shall be divided in the proportion that the contributors of regular and exotic wagers of pari-mutuel pools made or conducted at the commercial meets of each licensee during the calendar year

---

**1.** "Extended meet" means any series of harness horse races, *except those conducted by agricultural societies at their annual fair.* 8 M.R.S.A. § 274(2)(B) (Supp.1990).

**2.** "Handle" is the total dollars wagered.

bear to the total contributions of regular and exotic wagers to parimutuel pools made or conducted at the commercial meets of all licensees during that calendar year. Licensees sharing in the distribution shall use ½ of the fund so received for the purposes of supplementing purse money. The other ½ of this distribution is to be used by the commercial licensees for improving their racing facilities for the benefit of the public, horse owners, horsemen and horsewomen, and to increase revenue to the State from the increase in pari-mutuel wagering resulting from such improvements. For the purposes of this section, "improvements" means the amount paid out for new buildings or for permanent improvements made to improve the facilities utilized by the licensee for conduct of its racing meetings; or the amount expended in restoring the property or in improving the facility or in any part of the facility which results in the addition or replacement of a fixed asset. In general, the amounts referred to as improvements include amounts paid which add to the value, improve or substantially prolong the useful life of the race track utilized by the licensee for the conduct of its racing meeting. Amounts paid or incurred for repairs and maintenance of property, interest expense or lease payments are not improvements within the meaning of this section....

8 M.R.S.A. § 275 (Supp.1990). The Commission interpreted section 275 as requiring distributions from the 1989 fund for 1989 purse supplementation but withheld plaintiff's distribution for capital improvements because plaintiff was not licensed in 1990.

■ "Although this Court will not lightly disregard the interpretation given a statute by those charged with its administration, an administrative construction of a statute is not conclusive on this Court." *Soucy v. Board of Trustees of The Maine State Retirement System*, 456 A.2d 1279, 1281 (Me.1983). "[D]eference to the agency's construction must yield to the fundamental approach of determining legislative intent, particularly as it is manifest in the language of the statute itself." *Central Me. Power Co. v. Maine Pub. Util.*

*Comm'n.*, 436 A.2d 880, 885 (Me.1981). Only if that language is ambiguous will courts look beyond the words of the statute to its history, the policy behind it, and other extrinsic aids to determine statutory intent. *State v. Edwards C.*, 531 A.2d 672, 673 (Me.1987).

■ The section at issue provides that if the total monies collected exceeds $37,000,-000 *"for any calendar year,"* 72% of the excess *"shall be returned by the Treasurer of State to commercial meet licensees,"* divided in the proportion that the individual licensee's contributions has to the total contributions *"during the calendar year."* It is sufficient to note that the statute contains no authorization for the Commission to withhold the Treasurer's mandated payment, nor does it contain any provision for forfeiture of a licensee's stipend. We recognize that the relevant language of section 275, standing alone, does not unequivocally specify whether the 1989 stipend serves as a reimbursement for capital improvements made in 1989 or as a payment for capital improvements to be made in the future. Elsewhere, however, section 275 specifies that a separate portion of the fund is to be paid "by the end of the calendar year." 8 M.R.S.A. § 275. The companion provision in section 274 also provides expressly that stipends from the "extended meet" fund "shall be paid and returned by the end of the calendar year." Similarly, 7 M.R.S.A. § 62 (1989) provides for the distribution of the same "commercial meet" stipend fund to agricultural societies and requires year-end payment. No different intent is inferable from the language of section 275. A license for a harness race meet is issued for one year and expires on December 31st. 8 M.R.S.A. § 271 (Supp.1990). The stipend is paid by the end of the calendar year for capital improvements made during that year.

The entry is:

Judgment affirmed.

All concurring.