## Alan L. YOUNG

### v.

### BOARD OF TRUSTEES OF MAINE STATE RETIREMENT SYSTEM.

Supreme Judicial Court of Maine.

Submitted on briefs Sept. 26, 1991.

Decided Jan. 2, 1992.

William E. Macdonald, Bangor, for plaintiff.

Cabanne Howard, Deputy Atty. Gen., Polly Haight Frawley, Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

Alan Young appeals from an order of the Superior Court (Penobscot County, *Kravchuk, J.*) affirming a decision of the Board of Trustees (Board) of the Maine State Retirement System (MSRS) denying Young disability retirement benefits. Young argues that the process used by the Board was inadequate to provide the particularity required for judicial review and that the decision was not supported by substantial evidence in the record. We affirm the judgment.

Young was employed as a mental health worker at the Bangor Mental Health Institute from 1985 to 1989. In the latter part of 1987, he began to feel "very run down, tired ... and weak." In early 1988, his family physician, Dr. Ann Hanlon, referred him to a gastroenterology specialist, Dr. Daniel Cassidy. Dr. Cassidy diagnosed Young as having mild chronic liver disease but did not recommend treatment. He did say, however, that "[i]f there is any significant change or if any new symptoms develop then reevaluation would be worthwhile." This was the last time Dr. Cassidy saw Young. Young's condition persisted and he was unable to work for most of the rest of 1988 and 1989. He finally "retired" in June of 1989.

Young filed a disability report with the executive director of the MSRS seeking retirement disability benefits under 5 M.R.S.A. §§ 17901–17910 (1989 & Supp. 1990).[1] The executive director investigated Young's application pursuant to 5 M.R.S.A. § 17105(1) (1989)[2] by asking Young's physicians to send copies of Young's medical

---

1. Because Young applied for disability benefits prior to October 1, 1989, his application is governed by the provisions of 5 M.R.S.A. §§ 17901–17910 rather than 5 M.R.S.A. §§ 17921–17934. *See* 5 M.R.S.A. § 17901–A (Supp.1990).

2. 5 M.R.S.A. § 17105 (1989) states in part:

1. **Duties.** In addition to other duties set out in this Part, the executive director ... shall have the following duties.

A. The executive director shall have administrative responsibility for the retirement system, including responsibility for the approval of the payment of all benefits under this Part.

records and to fill out brief questionnaires.[3] The MSRS Medical Board, in discharge of its duties under 5 M.R.S.A. § 17106 (1989),[4] reviewed Young's file and gave its opinion to the executive director.[5] On this basis of this information, the executive director denied Young's application saying, "Based on the medical records presented to me, I am denying you a disability retirement allowance. There is no objective evidence prov-

ing that the disability claimed will permanently preclude you from performing the duties of your employment position...."

Young appealed the executive director's decision to the MSRS Board of Trustees pursuant to 5 M.R.S.A. § 17451(1) (1989).[6] At the hearing, Young testified at the request of the Board, but did not submit any additional evidence. The Board affirmed the executive director's decision.[7] Young

3. Both Dr. Hanlon and Dr. Cassidy submitted their records to the executive director. In addition, two hospitals submitted their records. Dr. Hanlon responded to the questionnaire with the following information:
   3. In your opinion, is his/her condition expected to be permanent?
   *Answer. Yes. Patient has chronic active hepatitis.*
   4. What limitations would you impose on this patient's work activity at this time?
   *Answer. Patient is unable to work because of extreme fatigue.*
   Dr. Cassidy, however, failed to respond until after the executive director issued his decision on April 25, 1990. Apparently, Dr. Cassidy misunderstood Young to be basing his application on his more recent trouble with gall stones which Young had removed in early 1989. His responses were:
   3. In your opinion, is his/her condition expected to be permanent?
   *Answer. Maybe.*
   4. What limitations would you impose on this patient's work activity at this time?
   *Answer. Recent problems were related to his Gall Bladder. He is now status (?) past (?) cholecystectomy. I would be optimistic that he would be able to resume employment once cleared by his surgeon.*

4. 5 M.R.S.A. § 17106 (1989) states in relevant part:
   **3. Powers and duties.** The medical board shall review the file of each applicant for disability retirement and shall:
   A. Recommend an additional medical review in those instances where there are conflicting medical opinions;
   B. Recommend additional medical tests to be performed on an applicant to obtain objective evidence of a permanent disability;
   C. Assist the executive director in determining if a disability review of a recipient of a disability allowance is warranted; and
   D. Inform the executive director and board in writing of its view as to the existence of a disability entitling an applicant to benefits under [sections 17901–17910].

5. The Medical Board's recommendation was as follows:
   [T]he medical evidence submitted indicate that Mr. Young is suffering from mild chronic

active hepatitis. We are of the opinion that mild chronic active hepatitis is not a disabling condition.
   We hereby certify that Alan Young is not physically or mentally incapacitated for further performance of duty, such incapacity is not likely to be permanent and should not be retired.

6. 5 M.R.S.A. § 17451(1) (1989) states:
   **1. Decision of executive director.** Any person aggrieved by a decision or ruling of the executive director may appeal the decision or ruling to the board.
   B. In any appeal proceeding, the board may investigate and consider all issues of fact or law, including the reasons for the decision or ruling of the executive director.
   C. The appeal proceeding is an adjudicatory proceeding within the meaning of [The Maine Administrative Procedure Act: 5 M.R.S.A. §§ 9051–9064].
   The Maine Administrative Procedure Act gives a party to an adjudicatory proceeding "the right to present evidence and arguments on all issues, and at any hearing to call and examine witnesses and to make oral cross-examination of any person present and testifying." 5 M.R.S.A. § 9056(2) (1989). At the hearing, the rules of evidence do not apply, and "[e]vidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S.A. § 9057(1) (1989).

7. By the time of the hearing, the Board had received Dr. Cassidy's questionnaire. See supra note 2. In addition, one of the Deputy Directors of the MSRS had obtained a memo from Dr. Cassidy which stated, "To whom it may concern: I would not expect chronic persistent hepatitis to keep a patient from returning to employment." The Board also had before it a second opinion of the Medical Board which said:
   [D]ue to: based on review of current opinion of Mr. Young's gastroenterologist, Dr. Cassidy—it is his opinion that Mr. Young's medical problem of mild chronic hepatitis is stable and should not prevent him from returning to work as a Mental Health Worker. We therefore recommend that he should not be retired medically.

appealed the Board's decision to the Superior Court, *see* 5 M.R.S.A. § 17451(2) (1989), which affirmed. Young then appealed to this court.

Because the Superior Court acted as an intermediate appellate court in this case, we examine the administrative record directly. *Robinson v. Board of Trustees of Maine State Retirement Sys.*, 523 A.2d 1376, 1378 (Me.1987). Our review is limited to whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Id.* at 1378; 5 M.R.S.A. § 11007(4)(C) (1989). We must determine whether the administrative record contains competent and substantial evidence that supports the result reached. *Gulick v. Board of Envtl. Protection*, 452 A.2d 1202, 1208 (Me.1982). The evidence must be such that a reasonable mind would accept it as adequate to support the conclusion. *Id.* at 1209.

Pursuant to 5 M.R.S.A. § 17904(1) (1989), a state employee becomes eligible for a disability retirement benefit if he becomes "disabled" while working for the state before reaching the normal retirement age.[8] The term "disabled" is defined in the statute as being a permanent, physical or mental incapacity that will be revealed by medical examination or tests. 5 M.R.S.A. § 17901(1), (2).[9] Therefore, for Young to prevail on his application he must prove that his disability is permanent and is detectable by medical examination or tests.

Young argues that the procedure that the MSRS used to evaluate his claim was inadequate and lacks the particularity required for judicial review, and that the evidence was insufficient to support the Board's finding. The record does not reveal any causal connection between Young's fatigue and the hepatitis, nor is there any evidence that the effects of medication, if any, affect his work ability. Young did testify that the fatigue arose during the time period that the diagnosis of chronic hepatitis was made. Dr. Hanlon also noted the fatigue, but she did not make the hepatitis diagnosis or causally connect the two. The MSRS also had evidence that neither Dr. Cassidy nor the Medical Board believed Young's chronic hepatitis prevented him from returning to work. Young had ample opportunity to present evidence at the hearing that would have provided the necessary causal connection between his chronic hepatitis and fatigue as well as the effects, if any, of medication on his work ability. Accordingly, the conclusion of the MSRS is supported by the evidence before it and Young cannot now complain of any inadequacy of the evaluation by the MSRS.

The entry is:

Judgment affirmed.

All concurring.

---

8. The applicable terms of the statute are:
    **1. Qualification.** ... [A] member qualifies for a disability retirement benefit if he becomes disabled:
      **A.** While in service; and
      **B.** Before reaching the normal retirement age.
  5 M.R.S.A. § 17904 (1989).

9. 5 M.R.S.A. § 17901 (1989) states in full:
    As used in this article, unless the context otherwise indicates, "disabled" means mentally or physically incapacitated:
    **1. Permanent.** To the extent that it is impossible to perform the duties of his employment position and the incapacity can be expected to be permanent; and
    **2. Revealed by examination.** So that the incapacity will be revealed by medical exami-

nation or tests conducted in accordance with section 17903.
Section 17903 provides:
    The examination or tests to determine whether a member is disabled under section 17901 are governed as follows.
    **1. Agreed upon physician.** The examination or tests shall be conducted by a qualified physician mutually agreed upon by the executive director and member claiming to be disabled.
    **2. Agreed upon place.** The examination or tests shall be conducted at a place mutually agreed upon by the executive director and member claiming to be disabled.
    **3. Costs.** The costs incurred under subsections 1 and 2 shall be paid by the retirement system.